OPINION
{¶ 1} Timothy Snyder appeals from the judgment of the Portage County Court of Common Pleas, adopting the decision of the magistrate, finding for him on his breach of contract claim against Regina Morgan, f.n.a. Addington, but denying his claims for bad *Page 2 
faith, fraud, and conspiracy against Mrs. Morgan, as well as his claims for fraud, bad faith, tortious interference with a contract, and conspiracy, against Brenda A. Easterling, and the Brenda A. Easterling Trust. We affirm.
 {¶ 2} Mrs. Morgan was the owner of real estate located at 665 State Rte. 183, Atwater Township, in Portage County, Ohio. Mrs. Morgan had placed a mobile home on the property. She received the property as a gift from her mother, Ms. Easterling. Mrs. Morgan's sister lived next door; Ms. Easterling lived across the street.
 {¶ 3} In the spring of 2001, Mrs. Morgan commenced seeking ways to dispose of the property, as she and her husband wished to move to Florida so he could find work. Her sister was uninterested. In May 2001, Mrs. Morgan offered the property to her mother, Ms. Easterling, who was interested in reacquiring it. In June 2001, Ms. Easterling offered her daughter $25,000 for the property: $12,000 up front; the rest in payments.
 {¶ 4} Ms. Easterling gave her daughter a check for $100 dated July 7, 2001, which both women claimed to be a down payment on the property. However, the money was used to purchase a bus ticket to Florida for Mrs. Morgan's husband. Allegedly, further terms for purchase of the property were discussed at this time, though no writing evidencing a contract was ever prepared. July 26, 2001, Ms. Easterling called an attorney to prepare a deed transferring the property to the Brenda A. Easterling Trust. This conversation was confirmed by a July 27, 2001 letter from that attorney's office. August 1, 2001, Ms. Easterling and Mrs. Morgan went to the bank, transferred title to the mobile home on the property to Ms. Easterling, and had the *Page 3 
certificate notarized by a bank employee. Ms. Easterling paid taxes due on the mobile home and the property on August 7, 2001.
 {¶ 5} In the meantime, Mrs. Morgan, evidently eager to join her husband in Florida, undertook other arrangements. Mr. Snyder had become aware through Mrs. Morgan's stepfather that she was interested in selling the property. Mr. Snyder wished to purchase a property for rental purposes. Without informing Ms. Easterling, Mrs. Morgan contacted Mr. Snyder in late July 2001. They met at the property August 1, 2001. Mrs. Morgan offered to sell for $35,000; Mr. Snyder, to buy for $30,000.
 {¶ 6} August 5, 2001, Mrs. Morgan telephoned Mr. Snyder, and agreed to sell the property for $30,000, with an immediate down payment of $300. Mr. Snyder was to assume back taxes on the property and mobile home.
 {¶ 7} That same day, Mr. Snyder's girlfriend, Ms. Barbara Earnest, brought a check for $300 to Mrs. Morgan. Mrs. Morgan then largely dictated the terms of a contract, which Ms. Earnest, a notary, wrote down:
 {¶ 8} "I Regina Addington [Morgan] accept the price of 30,000 for land and mobile home located at 665 Rt 183 Atwater, Ohio 44201. Buyer paystitle Search, Back Taxes of $550 for land $150 for mobile home. * Sale of trailer is contingent on Sale of Land. Buyer Pays Escrow fee,Conveyor Fee, conveyor form, any and all fees occurring after this dateplus closing cost. Buyer is responsible." (Emphasis sic.)
 {¶ 9} Following the signature lines was an acknowledgment that a down payment of $300 had been made August 5, 2001, and that the balance due and remaining was $29,700. *Page 4 
 {¶ 10} Mrs. Morgan accepted Mr. Snyder's check from Ms. Earnest, and signed this agreement. Mr. Snyder signed it that same day. Mr. Snyder discussed his financing of the deal with Mrs. Morgan the next day, Monday, August 6, 2001. Mr. Snyder informed her he would go to the bank Thursday, August 9, 2001.
 {¶ 11} Wednesday, August 8, 2001, Mrs. Morgan called Mr. Snyder from her mother's, and requested to meet him at his house. He agreed to meet her at the property. After hanging up, Mrs. Morgan admitted to Ms. Easterling she was selling the property to Mr. Snyder.
 {¶ 12} When Mr. Snyder arrived, Mrs. Morgan told him she would not honor their contract, and attempted to return the $300 down payment. Mr. Snyder refused, demanding an additional $2,000 to call off the deal. Mrs. Morgan then brought her mother over. Ms. Easterling informed Mr. Snyder that the property was hers, and that he would not get it. An argument ensued, with Mr. Snyder finally leaving, saying he would obtain a lawyer.
 {¶ 13} Immediately following her daughter's revelation of the contract with Mr. Snyder, Ms. Easterling arranged to transfer the title to the mobile home on the property to her trust. The deed for the property Ms. Easterling had previously ordered from her attorney arrived August 10, 2001. She took her daughter to the home of an elderly neighbor, Ms. Maxine Knapp — a notary. Ms. Easterling had written a contract for the sale of the property from her daughter to herself. She prevailed on Ms. Knapp to backdate her notarization of the signatures on this document to August 1, 2001. Ms. Easterling and her daughter also signed and notarized the deed, transferring the *Page 5 
property, and a handwritten note from Ms. Easterling to her daughter, showing the payoff.
 {¶ 14} On or about December 4, 2003, Mr. Snyder commenced this action by filing a complaint sounding in breach of contract, fraud, tortious interference with a contract, bad faith, and conspiracy. Defendants included Mrs. Morgan, Ms. Easterling, the Brenda A. Easterling Trust, and Ms. Knapp. Ms. Knapp answered, and cross-claimed against Mrs. Morgan and Ms. Easterling. Ms. Easterling, individually and as trustee of her trust, answered and cross-claimed against her daughter, Mrs. Morgan; and answered Ms. Knapp's cross-claim. Acting pro se, Mrs. Morgan answered Mr. Snyder's complaint.
 {¶ 15} The matter was referred to the magistrate. Bench trial was held February 3 and 4, 2005. February 7, 2005, Mr. Snyder dismissed his complaint against Ms. Knapp. Considerable post-trial briefing occurred.
 {¶ 16} January 30, 2006, the magistrate filed a lengthy, painstaking decision. In it, he concluded that Mr. Snyder was entitled to damages for breach of contract by Mrs. Morgan, but not specific performance through conveyance of the property. The magistrate set Mr. Snyder's contract damages at $20,900. He found against Mr. Snyder on all other claims. He further found against Ms. Easterling on her cross-claim against Mrs. Morgan.
 {¶ 17} Mr. Snyder objected to the magistrate's decision. By a judgment entry filed June 14, 2006, the trial court overruled the objections, and adopted the decision. Mr. Snyder timely appealed, making three assignments of error: *Page 6 
 {¶ 18} "[1.] The [t]rial [c]ourt erred to the prejudice of [p]laintiff-[a]ppellant Timothy Snyder in determining his damages with respect to his breach of contract claim against [a]ppellee * * * Regina Morgan.
 {¶ 19} "[2.] The [t]rial [c]ourt erred to the prejudice of [p]laintiff-[a]ppellant Timothy Snyder in granting judgment to [d]efendant-[a]ppellee Brenda Easterling with respect to [p]laintiff-[a]ppellant's tortious interference with a contract claim.
 {¶ 20} "[3.] The [t]rial [c]ourt erred by failing to award [p]laintiff-[a]ppellant punitive damages and attorney fees."
 {¶ 21} In reviewing a trial court's decision to adopt or reject a magistrate's decision, an appellate court looks for abuse of discretion.Hayes v. Hayes, 11th Dist. No. 2005-L-138, 2006-Ohio-6538, at ¶ 10. An abuse of discretion is no mere error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Rather, the term connotes an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. Id. Consequently, when a judgment "is supported by a substantial amount of competent and credible evidence," it may not be reversed. Hayes at ¶ 10.
 {¶ 22} By his first assignment of error, Mr. Snyder asserts the trial court erred in calculating his breach of contract damages against Mrs. Morgan. We disagree.
 {¶ 23} "It is well established that the proper measure of damages for a breach of a real estate contract is the difference between the original contract price and the fair market value of the property at the time of the breach." Williams v. Kondziela, 11th Dist. No. 2002-L-190, 2004-Ohio-2077, at ¶ 20. In this case, the contract price established for sale of the property by Mrs. Morgan to Mr. Snyder was $30,000, less $700 in back taxes owed on the land and mobile home, and various fees, such as escrow and closing *Page 7 
costs. Evidence regarding the fair market value of the property was presented by Mr. Snyder's expert appraiser, Mr. Joel Potter. Using the comparable sales method, Mr. Potter testified regarding a "value range" of $51,600 to $60,500, and concluded the value of the subject property at the time of breach was $55,000.
 {¶ 24} In making his calculation of contract damages, the magistrate used the lowest figure mentioned by Mr. Potter in his value range: $51,600. He then subtracted the contract price ($30,000) and the $700 in back taxes Mr. Snyder contracted to pay, to arrive at damages of $20,900.[1] While we agree that the trial court could have used the appraised value of the property in calculating damages ($55,000), we cannot find an abuse of discretion in its choice of the lower figure. The figure was in evidence, and evidentiary matters are peculiarly within the competence of the trial courts.
 {¶ 25} The first assignment of error lacks merit.
 {¶ 26} By his second assignment of error, Mr. Snyder argues the trial court incorrectly denied his tortious interference claim against Ms. Easterling. Essentially, the magistrate determined that Ms. Easterling was justified in interfering with the Morgan-Snyder contract, for two reasons: (1) her own, prior contract for purchase on the property from Mrs. Morgan; and (2), the fact that the property was in Ms. Easterling's family, and in fact had originally been a gift from Ms. Easterling to Mrs. Morgan, her daughter.
 {¶ 27} "A claim for tortious interference with a contract must satisfy the following elements: `(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack *Page 8 
of justification, and (5) resulting damages.'" A Way of Life, Inc. v.Schulda, 11th Dist. No. 2004-P-0032, 2005-Ohio-6288, at ¶ 36, quotingFred Siegel Co., L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, paragraph one of the syllabus.
 {¶ 28} Ms. Easterling does not dispute Mr. Snyder's establishment of the first, second, and fifth elements of tortious interference; and, we agree with the magistrate's conclusion that she set out, from the moment she knew of the Morgan-Snyder contract, to procure its breach, which satisfies the third element. The only question presented is whether the magistrate was correct in his conclusion that her interference was justified.
 {¶ 29} "* * * Establishment of the fourth element of the tort of tortious interference with contract, lack of justification, requires proof that the defendant's interference with another's contract was improper. * * *
 {¶ 30} "* * * In determining whether an actor has acted improperly in intentionally interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. (Restatement of the Law 2d, Torts [1979], Section 767, adopted.)"Siegel, paragraphs two and three of the syllabus.
 {¶ 31} In this case, the magistrate utilized the correct test for determining justification, and carefully balanced the various factors in determining that, while Ms. *Page 9 
Easterling's conduct may have been wrongful, her interest in protecting her own contract, to purchase back land she had given freely to her daughter, outweighed Mr. Snyder's interest in obtaining a rental property at a below market price. There are strong arguments against the learned magistrate's conclusion. Convincing a notary to falsify her authentification of a signature's date is no small thing. But the standard of review is whether the trial court abused its discretion in adopting the magistrate's decision. While we might balance theSiegel factors differently than the magistrate, it certainly cannot be said his careful, complete consideration of the issue does not comport with reason or the record. State v. Ferranto (1925), 112 Ohio St. 667,676-678. Consequently, the trial court did not abuse its discretion in adopting the decision.
 {¶ 32} The second assignment of error lacks merit.
 {¶ 33} Under his third assignment of error, Mr. Snyder argues he is entitled to punitive damages, due to the maliciousness of Ms. Easterling's actions, and attorney fees consequent to the punitive damages.
 {¶ 34} "The decision of whether to award punitive damages and in what amount rests in the discretion of the finder of fact. * * * Similarly, the decision of whether to award attorney fees is also left to the sound discretion of the trial court." Hastings v. J.E. Scott Corp., 2d Dist. No. 2003 CA 32, 2004-Ohio-1821, at ¶ 39. (Internal citation omitted.) In this case, the magistrate concluded, and the trial court agreed, that Ms. Easterling's misconduct did not rise to the level sufficient to support punitive damages-and, consequently, attorney fees. We may not substitute our judgment. Id.
 {¶ 35} The third assignment of error lacks merit.
 {¶ 36} The judgment of the Portage County Court of Common Pleas is affirmed. *Page 10 
[1] We note that Ms. Easterling paid the various back taxes on the property August 7, 2001, before this dispute commenced. However, as Mr. Snyder agrees that the tax amount should be deducted from his damages, we shall not consider the issue.
CYNTHIA WESTCOTT RICE, P.J., concurs,
DIANE V. GRENDELL, J., concurs in part, dissents in part with a Concurring/Dissenting Opinion.