OHIO ASSOCIATION OF PUBLIC SCHOOL EMPLOYEES/AFSCME LOCAL 4, AFL–CIO, et al., Appellants and Cross–Appellees,

v.

MADISON LOCAL SCHOOL DISTRICT BOARD OF EDUCATION et al., Appellees; Community Bus Services, Inc., Appellee and Cross–Appellant.

[Cite as *Ohio Assn. of Pub. School Emps./AFSCME Local 4, AFL–CIO v. Madison Local School Dist. Bd. of Edn.*, 190 Ohio App.3d 254, 2010-Ohio-4942.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2009–L–148.

Decided Oct. 8, 2010.

See also 2009 WL 161441.

Thomas C. Drabick Jr., OAPSE Director of Legal Services, for appellants and cross-appellees.

Britton, Smith, Peters & Kalail Co., L.P.A., David K. Smith, and David S. Hirt, for appellees Madison Local School District Board of Education, Jones Herrholtz, and Matthew Chojnacki.

Johnson, Miller & Schmitz, L.L.P., and William F. Schmitz, for appellee and cross-appellant Community Bus Services, Inc.

---

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellants, Ohio Association of Public School Employees ("OAPSE")/AFSCME Local 4, AFL–CIO, and 37 school bus drivers, bus assistants, and mechanics ("the union") appeal the judgment of the Lake County Court of Common Pleas granting the motion for judgment on the pleadings filed by appellees, Madison Local School District Board of Education ("the board"), Matthew J. Chojnacki, and James J. Herrholtz and partially granting the motion to dismiss filed by appellee, Community Bus Services, Inc. ("CBS"). Cross-appellant, CBS, appeals the judgment of the trial court partially denying its motion to dismiss. For the reasons that follow, we affirm.

{¶ 2} The union is the exclusive bargaining representative for various classifications of nonteaching employees of the board, including appellants, 37 school bus drivers, bus assistants, and mechanics. At all relevant times, appellees James J. Herrholtz and Matthew J. Chojnacki were employed by the board as its superintendent and assistant superintendent, respectively. CBS is a private bussing company based in Warren, Ohio, that has contracts with several Ohio boards of education to provide bus transportation for their students.

{¶ 3} The statement of facts that follows is based solely on the allegations of the union's complaint and its attached exhibits. The union and the board entered a collective bargaining agreement ("CBA"), effective July 1, 2006, through June 30, 2008, which was in effect at all relevant times. The CBA provided that the board could enter contracts with private contractors to do work normally performed by employees in the bargaining unit within the scope of their normal duties. It provided that the board could enter such contracts as long as the superintendent or his designee first provides "[n]otice of and [a] rationale for the intent to execute such agreements" to the union and an "opportunity for the [u]nion to discuss the effects of such a decision."

{¶ 4} The union alleged in its complaint that Herrholtz and Chojnacki wanted to end the board's relationship with the union bus drivers because they had

recently filed several grievances and unfair-labor-practice charges against the board.

{¶ 5} In February 2008, the board retained CBS to perform an internal review of the board's student-transportation program and to make recommendations for efficiency and effectiveness. One of the purposes of the analysis was to determine whether it would be more cost-effective for CBS to provide transportation services to the board rather than the union transportation personnel. Later in February 2008, CBS discussed the analysis it was performing with the board at a public meeting at which the union's president was present. CBS completed its analysis in May 2008. In that month, CBS advised Chojnacki and Herrholtz that if the board retained CBS to provide school bus services, the board would save from $150,000 to $300,000 per year.

{¶ 6} The CBA was due to expire on June 30, 2008. On May 29, 2008, Herrholtz sent the union a letter with the board's proposed new CBA for the bus drivers. The proposal made changes to certain terms of the current CBA with respect to the bus drivers, which Herrholtz said in the letter were needed for the board to continue its relationship with the union bus drivers. Herrholtz said the proposal was an "all or nothing offer," which had to be accepted as presented or would be considered rejected. After sending this letter, Herrholtz asked the union twice for a meeting to discuss the board's proposal. On June 2, 2008, Herrholtz sent a follow-up e-mail to the union, saying, "If the union agrees to the proposed changes without modification, we will not contract out bus services."

{¶ 7} In the union's response letter to Herrholtz, dated June 16, 2008, the union refused to attend a meeting to discuss the board's proposal and rejected it. The union acknowledged that Herrholtz had said the reason for privatization of school bus services was to save money and that it would save the board "thousands of dollars."

{¶ 8} On the next day, June 17, 2008, the board unanimously voted to approve CBS's proposed contract to provide bus-transportation services for five years beginning July 1, 2008.

{¶ 9} On June 19, 2008, the board notified each union bus driver by separate letter that pursuant to R.C. 3319.0810, their employment would end on June 30, 2008, when the CBA expired. The letter explained that this Revised Code section authorized boards of education to terminate transportation staff positions for reasons of economy and efficiency and to contract with a private agency to provide transportation to the students.

{¶ 10} On June 25, 2008, the board and CBS signed a memorandum of understanding supplementing CBS's proposed contract that had been approved by the board on June 17, 2008. The memorandum guaranteed that the contract

price for each year of the contract would result in a savings of $300,000 from the board's actual final cost of such services for the fiscal year ending June 30, 2008. The memorandum also provided that since the actual final cost for bus services in the last fiscal year had not yet been determined, the contract price for the first and subsequent years under the CBS contract could not yet be determined.

{¶ 11} The board signed the contract on July 1, 2008. Since the actual final cost for the previous fiscal year for transportation services was not yet determined, the contract price was left blank on the contract.

{¶ 12} Thereafter, several of the bus drivers filed grievances due to their termination. On July 2, 2008, Herrholtz notified the union that since the bus drivers were not employed by the board as of July 1, 2008, he would not accept any grievances regarding their termination. On July 17, 2008, Chojnacki formally denied the grievances because the bus drivers had been terminated.

{¶ 13} On July 30, 2008, the union filed a complaint in the trial court alleging ten causes of action against the board, Herrholtz, Chojnacki, CBS, and the state of Ohio. Appellants also filed a motion for injunctive relief. In the course of the proceedings, the trial court dismissed the state from the case and denied the union's motion for injunction.

{¶ 14} Subsequently, the board, Herrholtz, and Chojnacki filed a motion for judgment on the pleadings, and CBS filed a motion to dismiss pursuant to Civ.R. 12(B)(1) for want of subject-matter jurisdiction. The union filed briefs in opposition to both motions. In its judgment, dated October 2, 2009, the trial court granted the board, Herrholtz, and Chojnacki's motion for judgment on the pleadings as to all counts of the complaint. The court granted CBS's motion to dismiss as to the union's second, fifth, and eighth causes of action but denied it as to the remaining counts. However, the trial court also dismissed the remaining counts against CBS based on the court's ruling on the motion for judgment on the pleadings.

{¶ 15} The union appeals the trial court's judgment, asserting four assignments of error. CBS cross-appeals, asserting one assignment of error. For its first assigned error, the union alleges:

{¶ 16} "The trial court erred as a matter of law when it failed to address the statutory claims related to R.C. 3319.0810 raised by Plaintiffs–Appellants in their complaint, specifically that the contract entered into between Defendant–Appellee School District and Defendant–Appellee CBS, Inc. does not satisfy the requirements of the statute."

{¶ 17} "[A] motion for judgment on the pleadings is the same as a motion to dismiss filed after the pleadings are closed and raises only questions of law. The pleadings must be construed in a light most favorable to the party

against whom the motion is made. *Vaught v. Vaught* (1981), 2 Ohio App.3d 264, 265[, 2 O.B.R. 293], 441 N.E.2d 811; *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165–166[, 63 O.O.2d 262], 297 N.E.2d 113. Pursuant to Civ.R. 12(C), judgment on the pleadings is proper where the court construes as true the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the plaintiff and concludes that the plaintiff can prove no set of facts to support the claim for relief. *Engleman v. Cincinnati Bd. of Edn.* (June 22, 2001), 1st Dist No. C–000597, *5 [2001 WL 705575, *2], jurisdictional motion overruled (2001), 93 Ohio St.3d 1452[, 756 N.E.2d 116]; *State ex rel. Midwest Pride IV, Inc. v. Pontious* [1996], 75 Ohio St.3d 565, 570, [664 N.E.2d 931]." *Westwinds Dev. Corp. v. Outcalt,* 11th Dist. No. 2008–G–2863, 2009-Ohio-2948, 2009 WL 1741978, at ¶ 22.

{¶ 18} "A court must limit its determination of a motion for judgment on the pleadings solely to the allegations in the pleadings and any writings attached to those pleadings." *Drozeck v. Lawyers Title Ins. Corp.* (2000), 140 Ohio App.3d 816, 820, 749 N.E.2d 775. A motion for judgment on the pleadings can be granted only when there are no material factual issues and the movant is entitled to judgment as a matter of law. *Pontious,* 75 Ohio St.3d at 569, 664 N.E.2d 931.

{¶ 19} The standard of review for a dismissal pursuant to Civ.R. 12(B)(1) based on a lack of subject-matter jurisdiction is "whether the plaintiff has alleged any cause of action over which the court has authority to decide." *Bringheli v. Parma City School Dist. Bd. of Edn.,* 8th Dist. No. 91064, 2009-Ohio-3077, 2009 WL 1819297, at ¶ 10.

{¶ 20} This court has held that an appellate court reviews de novo the granting or denial of a motion for judgment on the pleadings and a motion to dismiss for want of subject-matter jurisdiction. *Outcalt,* 2009-Ohio-2948, 2009 WL 1741978, at ¶ 23, citing *Euvrard v. Christ Hosp. & Health Alliance* (2001), 141 Ohio App.3d 572, 575, 752 N.E.2d 326; *Swift v. Gray,* 11th Dist. No. 2007–T–0096, 2008-Ohio-2321, 2008 WL 2045018, at ¶ 38.

{¶ 21} The union argues that the trial court erred in dismissing its first cause of action, in which the union asked for a declaration that the CBS contract was not a valid and enforceable transportation-services contract pursuant to former R.C. 3319.0810. We note that this statute was in effect between September 29, 2005, and October 16, 2009, and was, therefore, in full force at all relevant times. The parties agree there are no cases interpreting this statute, and our independent research has not revealed any.

{¶ 22} Former R.C. 3319.0810(A), 151 Ohio Laws, Part II, 2868, 3577, entitled "Termination of transportation staff," provided: "The board of education of any

school district * * * may terminate any of its transportation staff positions for reasons of economy and efficiency if the board instead of employing its own staff to transport some or all of the students enrolled in the district schools enters into a contract with an independent agent for the provision of transportation services for such students." This section then provided that such contract could be entered only if six listed conditions were satisfied. Id. at 3578–3579. The union does not argue on appeal that any of these conditions was not met.

{¶ 23} Under its first assigned error, the union raises three issues. First, it argues that the CBS contract was illusory and therefore unenforceable because the provision in the contract concerning the price to be paid by the board was left blank. However, former R.C. 3319.0810 did not give the union the authority to challenge the contract on this basis. That provision set forth two instances in which a transportation employee could sue a school board after it entered a transportation-services contract with an independent agent. Under former R.C. 3319.0810(B), a transportation employee could sue the board if the board (1) failed to comply with any condition prescribed in division (A) of this section or (2) failed to enforce on the agent its contractual obligations prescribed in divisions (A)(5) (requiring the agent to "consider" hiring the board's former employees) and (6) (requiring the agent to "recognize" for purposes of employee representation in collective bargaining any employee organization that represented the terminated employee). Neither of these situations is applicable here.

{¶ 24} This court has held that the canon of construction "expressio unius est exclusio alterius" means that the inclusion of one thing in a law implies the exclusion of another. *Vasquez v. Windham*, 11th Dist. No. 2005–P–0068, 2006-Ohio-6342, 2006 WL 3478417, at ¶ 28. Thus, since former R.C. 3319.0810 set forth only two instances in which a transportation employee could sue a school board following its approval of a transportation-services contract and these instances did not include an allegation that a provision in the contract was indefinite, the union does not have the authority to challenge on behalf of its employees the CBS contract on this basis. For this reason alone, the union's argument lacks merit.

{¶ 25} In any event, the CBS contract, including the memorandum of understanding, attached to the complaint demonstrates that the contract is not illusory for lack of a definite term regarding pricing. While the contract price was left blank, the union concedes that on June 25, 2008, and thus one week before the board entered the CBS contract, the parties entered a written memorandum of understanding regarding the formula by which the contract price was to be determined. In that memorandum, the parties agreed: "Company has guaranteed District an annual savings of [$300,000] throughout the Term of the Agreement based on the District's actual final cost for pupil transportation

services for the Fiscal Year ending June 30, 2008." The memorandum also provided that CBS would provide services for the initial year of the contract and each subsequent year "at a price that shall result in [$300,000] in savings over [the board's] actual final cost for such services for the Fiscal Year ending June 30, 2008." Thus, the annual contract price was to be $300,000 less than the "actual final cost" of student transportation for the fiscal year ending June 30, 2008. Since the actual final cost of transportation in the last fiscal year was not yet determined, the contract price was still unknown and left blank on the contract.

{¶ 26} " 'It is well settled that price is an essential term to a contract. Consequently, it must be definite and certain. *Preston v. First Bank of Marietta* (1983), 16 Ohio App.3d 4, 6[, 16 OBR 4, 473 N.E.2d 1210]. If the price is not specified in the contract, it must be 'easily ascertainable by reference to some extrinsic standard, e.g., a contract to buy stock at market price.' Id., citing 1 Williston on Contracts (3 Ed. 1957) 153, Section 47." *Bailey v. Mills* (Feb. 7, 2001), 5th Dist. No. 1999 AP 07 0043, 2001 WL 166812, *2.

{¶ 27} This court has held that the terms of a contract may be affected by another writing executed as part of the same transaction. *Zito v. Tamborsky,* 11th Dist. No. 2003–L–178, 2005-Ohio-1799, 2005 WL 880228, at ¶ 25, citing *Edward A. Kemmler Mem. Found. v. 691/733 East Dublin–Granville Rd. Co.* (1992), 62 Ohio St.3d 494, 500, 584 N.E.2d 695 (a contract and a separate written instrument relating to the same transaction must be construed with reference to each other).

{¶ 28} Turning to the facts of the instant case, the CBS contract, as supplemented by the memorandum of understanding, does not demonstrate that the contract price was totally within the discretion of the board, as the union argues. Rather, it was based on a definite formula to which both parties had agreed. It was, therefore, easily ascertainable by reference to some extrinsic standard. The fact that the actual contract price was not determined as of the date the contract was signed, i.e., on July 1, 2008, does not mean the board had unfettered discretion to determine the contract price. The union has not challenged the admissibility of the memorandum of understanding. In fact, it attached it as an exhibit to the complaint as part of the CBS contract. It therefore cannot complain that it was not part of the CBS contract or that the formula for arriving at the contract price contained therein was not part of the contract.

{¶ 29} Thus, construing the contract and the memorandum of understanding together, we conclude that the annual contract price is the actual final cost of transportation for the last fiscal year less $300,000. The contract also includes a built-in annual increase of 3.9 per cent.

{¶ 30} Second, the union argues that the CBS contract is unenforceable because the board did not give any consideration in exchange for the services provided by CBS. In support, the union argues that the board retained title to its school buses, the school bus terminal, and mechanics' bays, and also retained its liabilities, including the cost of fuel and insurance for its buses.

{¶ 31} As a preliminary matter, we note that former R.C. 3319.0810 did not authorize the union to challenge the contract on this basis. For this reason alone, its argument is not well taken. Moreover, we note that the union does not cite any authority in support of its argument, in violation of App.R. 16(A)(7).

{¶ 32} We agree with the trial court's finding that for a transportation services contract to be enforceable, the statute does not require that the board transfer title to its buses and the property used to maintain them to the contractor or that the contractor be responsible for the purchase of fuel and insurance for the buses.

{¶ 33} In any event, it is axiomatic that a promise to pay for services, such as appears in the CBS contract, is sufficient consideration to support a contract. See *Cooper v. Cooper* (Apr. 29, 1983), 2d Dist. No. 1750, 1983 WL 4903, *2.

{¶ 34} For its third issue, the union argues that the CBS contract was not enforceable because the board did not enter it for reasons of economy and efficiency since there is no evidence that the contract resulted in economic savings or in increased efficiency compared to the previous fiscal year.

{¶ 35} Once again, former R.C. 3319.0810 set forth those instances in which a transportation employee can challenge a transportation-services contract. Because the statute does not permit an employee to challenge the contract on the ground that it was allegedly not entered for reasons of economy and efficiency, the union's third argument is not well taken.

{¶ 36} In any event, the union misconstrues the provision in the former statute, which expressly provided that a "board of education * * * may terminate any of its transportation staff positions *for reasons of economy and efficiency* if the board instead of employing its own staff to transport some or all of the students * * * enters into a contract with an independent agent for the provision of transportation services * * *." (Emphasis added.) The statute did not require that the contract actually result in economy and efficiency. To the contrary, former R.C. 3319.0810 merely required that the action be taken by the board "for reasons of economy and efficiency."

{¶ 37} The exhibits attached to the complaint by the union, including the CBS contract, the memorandum of understanding, and the correspondence between the parties, demonstrate there is no question that the CBS contract was entered for reasons of economy and efficiency. With respect to economy, these exhibits

show that by entering the CBS contract, the board would save $300,000 per year for five years, for a total savings of $1,500,000.

{¶ 38} Thus, based on the exhibits submitted by the union, we conclude that the board entered the CBS contract for reasons of economy and efficiency. We note that while the board was not required to prove that the contract actually resulted in economy and efficiency, the trial court correctly found that based on the union's exhibits, these objectives were achieved by the CBS contract. The trial court found:

{¶ 39} "OAPSE's contention that Board's contract with CBS does not provide economy is not supported by the plaintiff's own exhibits. Board was informed that they would save between $150,000 to $200,000 annually by contracting with CBS for its bus personnel and other transportation services. * * * Therefore, Board clearly achieved economy by hiring CBS to perform its bussing activities. Efficiency was also realized, because at a minimum, Board was freed from the burdens of processing payroll and human resources issues for bus drivers, and CBS became responsible for driving and maintaining the bus fleet."

{¶ 40} We therefore hold that the trial court did not err in finding that the CBS contract was a valid and enforceable transportation-services contract pursuant to former R.C. 3319.0810 and in dismissing the union's first cause of action.

{¶ 41} The union's first assignment of error is overruled.

{¶ 42} For its second assignment of error, the union contends:

{¶ 43} "The Trial Court erred as a matter of law when it ruled that it lacked jurisdiction over Plaintiffs'-Appellants' [sic] claims that R.C. 3313.0810 usurped the exclusive jurisdiction of SERB to determine the composition of bargaining units and improperly delegated such authority to the School District in this case."

{¶ 44} The union argues that the trial court erred in finding it lacked jurisdiction to determine its second cause of action. In that claim, the union alleged that former R.C. 3319.0810 does not apply to collective-bargaining units in which school bus drivers are included with other classifications because this would allow the board to sever school bus drivers, bus assistants, and bus mechanics from the bargaining unit, which is the exclusive province of the state employment relations board ("SERB"). The union further alleged that by entering the CBS contract pursuant to former R.C. 3319.0810, the board improperly severed these classifications from the bargaining unit.

{¶ 45} The trial court found that the union's second cause of action constituted a grievance arising out of the parties' CBA. That agreement lists the job classifications in the bargaining unit and expressly permits the board to subcontract work normally performed by employees in the bargaining unit. The CBA

also includes a grievance procedure, culminating in final and binding arbitration. R.C. 4117.10(A) provides:

{¶ 46} "An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees and employee organizations are subject solely to that grievance procedure * * *."

{¶ 47} It is well settled that if a party asserts rights that are independent of R.C. Chapter 4117, then the party's complaint may properly be heard in common pleas court. However, if a party asserts claims that arise from or depend on the collective-bargaining rights created by R.C. Chapter 4117, the remedies provided in that chapter are exclusive. *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 170–171, 572 N.E.2d 87.

{¶ 48} We agree with the finding of the trial court that because the union's second cause of action alleged that the board improperly severed the transportation classifications from the bargaining unit, as outlined in the CBA, this claim arises out of the CBA and was thus required to be addressed by the CBA's grievance procedure, including final and binding arbitration. However, even if the court erred in so finding, such error would be harmless because the union's only other alternative would be to file an unfair-labor-practice charge with SERB. In either case, the trial court would not have jurisdiction to rule on the matter.

{¶ 49} We therefore hold that the trial court did not err in finding that it lacked jurisdiction to address the union's second cause of action.

{¶ 50} In any event, we note that contrary to the union's argument, former R.C. 3319.0810 did not authorize the board to sever the transportation classifications from the bargaining unit. Instead, it expressly authorized the board "to terminate any of its transportation staff positions" and to fill such positions by contracting them out. The classifications in the unit remain intact so that if the board decides to bus using its employees, instead of using an outside contract, then they would still be in the bargaining unit. Thus, contrary to the union's argument, former R.C. 3319.0810 did not conflict with R.C. 4117.06(A), which gives SERB exclusive jurisdiction to determine the composition of public-sector bargaining units.

{¶ 51} The union's second assignment of error is overruled.

{¶ 52} For its third assignment of error, the union alleges:

{¶ 53} "The Trial Court erred as a matter of law when it ruled that Defendants–Appellees had a legitimate and lawful purpose for performing the acts they performed resulting in the termination from employment of the 37 school bus drivers, bus assistants, and bus mechanics formerly employed by Defendant–Appellee School District. As a result, the Trial Court erroneously concluded that the actions of Defendants–Appellees were not tortious."

{¶ 54} The union argues the trial court erred in dismissing its sixth cause of action (tortious interference with contract and employment) and its seventh cause of action (civil conspiracy) against Herrholtz, Chojnacki, and CBS because the trial court incorrectly found that the union could not show that their actions were not justified.

{¶ 55} This court has held that in order to recover for a claim of interference with a contract, the plaintiff must prove all of the following: " '(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) lack of justification, and (5) resulting damages.' " *Joe Ann Tabor Revocable Trust v. WDR Properties,* Inc., 11th Dist. No. 2009–L–118, 2010-Ohio-2049, 2010 WL 1840738, at ¶ 27, quoting *Snyder v. Morgan,* 11th Dist. No. 2006–P–0065, 2007-Ohio-4630, 2007 WL 2579402, at ¶ 27. The elements of a claim for interference with an employment relationship are the same as those required to prove interference with a contract, except that the word "contract" is substituted by the phrase "employment relationship." *Doyle v. Fairfield Machine Co.* (1997), 120 Ohio App.3d 192, 216, 697 N.E.2d 667.

{¶ 56} The trial court dismissed the union's interference claims because it found that the union's complaint and attached exhibits demonstrated that the union could not prove a breach of contract or that Herrholtz, Chojnacki, and CBS acted without justification, which are two essential elements of an interference claim.

{¶ 57} First, the trial court found that the union could not prove a breach of the CBA or interference with the bus driver's employment relationship because the CBA contained a clause allowing the board to subcontract work out, provided the union was given notice of and a rationale for taking such action and an opportunity to discuss the effects of such decision. Based on the exhibits the union attached to its complaint, we conclude that there are no genuine issues of fact concerning whether the board complied with each of these requirements. The court found that on February 19, 2008, CBS's principal attended a school board meeting at which the union president was present and discussed the efficiency analysis that CBS was performing. After the analysis was completed, the board notified the union that unless it agreed to several changes in the bus employees' contract, it would sever its relationship with those employees. The

union was aware that the board believed it would save thousands of dollars by privatizing its transportation services. The union was given an opportunity to attend a meeting to discuss the board's proposal, but the union refused to attend such meeting. The court also found that the CBA was in full force and effect for its entire term and that the bus drivers were employed and paid for their services for that same term. The court found that the board fully complied with the requirements of former R.C. 3319.0810 and that neither the CBA nor the bus drivers' individual employment contracts had been breached.

{¶ 58} In its appellate brief, the union does not challenge the finding of the trial court that the union could not prove a breach of contract, and the issue is therefore waived on appeal. *Mtge. Electronic Registration Sys., Inc. v. Petry*, 11th Dist. No. 2008–P–0016, 2008-Ohio-5323, 2008 WL 4561151, at ¶ 20, citing *State v. Awan* (1986), 22 Ohio St.3d 120, 122, 22 OBR 199, 489 N.E.2d 277.

{¶ 59} The union argues that while the CBA authorizes the board to subcontract work normally performed by an employee, it could not be used to allow the board to terminate that employee. However, this argument is within the scope of the CBA and thus could be raised only through the CBA's grievance procedure, including final and binding arbitration. In any event, the union states in its brief that "[t]he scope of the subcontracting language * * * was never an issue before the [t]rial [c]ourt." The issue is therefore waived on appeal. *Awan*, 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277.

{¶ 60} Second, the trial court found that even if there had been a breach of the CBA, the union could not establish a lack of justification, another element of an interference claim, because former R.C. 3319.0810 and the CBA both authorized the privatization of the board's transportation services. The union argues that the trial court erred in making this finding, but the union failed to refer to the record or to present any legal authority in support of its argument, in violation of App.R. 16(A)(7).

{¶ 61} In any event, the union could not maintain its claim of tortious interference against Herrholtz and Chojnacki because such claim requires the interference by a party outside the contract or employment relationship. *Kenty v. Transam. Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 419, 650 N.E.2d 863. For this reason, a supervisor or other employee cannot be liable for interference. *Lennon v. Cuyahoga Cty. Juvenile Court*, 8th Dist. No. 86651, 2006-Ohio-2587, 2006 WL 1428920, at ¶ 19.

{¶ 62} Next, appellant argues that the trial court erred in dismissing its claim alleging a civil conspiracy. This court has held that the elements of a civil conspiracy claim include " '(1) a malicious combination, (2) involving two or more persons, (3) causing injury to person or property, and (4) the existence of an

unlawful act independent from the conspiracy itself.'" *State ex rel. Fatur v. Eastlake,* 11th Dist. No. 2009–L–037, 2010-Ohio-1448, 2010 WL 1254369, at ¶ 45, quoting *Gibson v. City Yellow Cab Co.* (Feb. 14, 2001), 9th Dist. No. 20167, 2001 WL 123467, *3. "An underlying tort is necessary to give rise to a cause of action for conspiracy." *Stiles v. Chrysler Motors Corp.* (1993), 89 Ohio App.3d 256, 266, 624 N.E.2d 238.

{¶ 63} The trial court found that because the union's complaint established Herrholtz, Chojnacki, and CBS did not breach the CBA or interfere with the bus drivers' employment relationship, there was no underlying tort, which is an essential element of a civil conspiracy. We hold that based on our independent review of the union's exhibits, the trial court did not err in making this finding. Again, the union did not challenge this finding of the trial court by reference to the record or pertinent authority, and it is therefore not properly before us. App.R. 16(A)(7).

{¶ 64} The union's third assignment of error is overruled.

{¶ 65} For its fourth and final assigned error, the union alleges:

{¶ 66} "The trial court erred as a matter of law when it ruled that Plaintiffs'-Appellants' [sic] claims are limited to the jurisdiction of contract arbitration and SERB's unfair labor practice procedures."

{¶ 67} The union argues that the trial court erred in ruling that it lacked jurisdiction to rule on its eighth cause of action because that claim alleged unfair labor practices, over which SERB has exclusive jurisdiction. The union fails to cite any authority or to present any pertinent argument in support of this assignment of error, in violation of App.R. 16(A)(7). For this reason alone, this assignment of error is not well taken.

{¶ 68} Instead, the union refers to various e-mails from school board members either criticizing or supporting the board's decision to subcontract its transportation personnel. The union presents this extraneous material suggesting that the board should have engaged in further collective bargaining before entering the CBS contract. However, as the CBA demonstrates, the parties had previously negotiated the issue of subcontracting, and in so doing, had given the board the authority to subcontract any work of the employees in the bargaining unit. This, of course, has nothing to do with whether the trial court erred in ruling that the union's eighth cause of action constituted unfair-labor-practice charges.

{¶ 69} In its eighth cause of action, the union alleged that in submitting its proposal on May 29, 2008, the board refused to bargain with it and that the board discriminated against the bus drivers because they had previously filed grievances against the board, which practices, the union alleged, were in violation of R.C. 4117.11. This section of the Revised Code is captioned "Unfair labor

practices." Thus, the union conceded in its eighth cause of action that the allegations contained therein constituted unfair-labor-practice charges.

{¶ 70} This court has held that an act that constitutes an unfair labor practice under R.C. Chapter 4117 is subject to the exclusive jurisdiction of SERB to the exclusion of the court of common pleas. *Shamrock v. Trumbull Cty. Commrs.* (1990), 71 Ohio App.3d 54, 57, 593 N.E.2d 28.

{¶ 71} We therefore hold that the trial court did not err in finding that the union's eighth cause of action constituted unfair-labor-practice charges within the exclusive jurisdiction of SERB and that it therefore lacked jurisdiction to address it.

{¶ 72} In fact, the union concedes that it has filed an unfair-labor-practice charge with SERB arising out of the instant case, which resulted in SERB's finding that the board complied with the CBA's requirements regarding subcontracting when it privatized its school bus services and terminated its transportation staff and committed no unfair labor practices. The union's appeal of SERB's ruling is now pending in the trial court.

{¶ 73} Finally, we note that the union does not challenge the dismissal by the trial court of its third, fourth, fifth, ninth, and tenth causes of action. Any challenge to the trial court's dismissal of these claims is, therefore, waived.

{¶ 74} Appellant's fourth assignment of error is overruled.

{¶ 75} For its cross-appeal, CBS asserts the following as its sole assignment of error:

{¶ 76} "The trial court erred when it denied the Cross–Appellant's Motion to Dismiss under Civil Rule 12(b)(1) [sic] on the First, Third, Fourth, Sixth, Seventh and Ninth Causes of Action."

{¶ 77} As a preliminary matter, we note that CBS has conflated the terms "cross-appeal" and "cross-assignment of error." This court addressed the distinction between them in *Rzeszotarski v. Sanborn* (June 7, 1996), 11th Dist. No. 95–G–1906, 1996 WL 649111, as follows:

{¶ 78} "The subject and application of cross-assignments of error and cross-appeals are addressed in App.R. 3(C) and the attendant staff note. Cross-assignments of error are asserted for the purpose of *preserving the relief granted in the trial court's judgment* generally for reasons not advanced by the trial court, to further guard against reversal, and/or to obtain rulings on interlocutory orders, in the event the case is not affirmed. Cross-appeals are asserted for the purpose of *obtaining different relief than that granted by the trial court.* App.R. 3(C). Appellees' cross-assignments are really in the nature of assignments in a cross-appeal rather than cross-assignments because they essentially assert

grounds for reversal. Since no separate notice of appeal was filed with respect to them, these are not properly before us. Under App.R. 12(A)(2), when assignments of error are not submitted in proper form, the appellate court is under no obligation to review them. We, therefore, decline to review appellees' deficiently styled cross-appeals." (Emphasis added.) Id. at *9.

{¶ 79} Here, CBS does not seek different relief because the trial court in its judgment dismissed all of the union's claims against it. Therefore, its use of a cross-appeal to assert its argument is incorrect. CBS should, therefore, have presented its argument as a cross-assignment of error rather than as a cross-appeal. In any event, since the trial court granted to CBS essentially the identical relief that it requests in its cross-appeal, i.e., the dismissal of all the union's claims against it, we hold that its cross-appeal is moot.

{¶ 80} For the reasons stated in the opinion of this court, the assignments of error of the union and CBS are not well taken. It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Judgment affirmed.

CANNON, J., concurs.

TRAPP, P.J., concurs in part and dissents in part.

TIMOTHY P. CANNON, Judge, concurring.

{¶ 81} I concur with the judgment of the majority. However, I write separately to address two issues.

{¶ 82} First, allowing appellants to proceed with the causes of action alleged in the complaint defeats the entire purpose of requiring these issues to be presented to SERB and/or arbitration. While the conduct of the district administrators may have been as reprehensible as alleged, the parties have agreed, and the law requires, this conduct to be addressed in a separate forum.

{¶ 83} Second, there are issues that should be clarified with regard to the distinctions between a "cross-appeal" and a "cross-assignment of error."

{¶ 84} With regard to the cross-appeal, App.R. 3(C)(2) states as follows: "[C]ross appeal not required. A person who intends to defend a judgment or order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the judgment or order is not required to file a notice of cross appeal." All the claims against appellee CBS were dismissed by the trial court. Presumably, this appellee does not want to change this judgment. It appears CBS is seeking to have this court rule that the judgment is

correct, but for the wrong reason. This is a classic example of a situation in which a cross-assignment of error should be used.

{¶ 85} While App.R. 3(C) makes no mention of a cross-assignment of error, it probably should in order to clarify what is expected of appellees who find themselves in a position in which the trial court arrived at the correct result but for the wrong reason. A better explanation of what is expected can be found in R.C. 2505.22. That statute provides:

{¶ 86} "In connection with an appeal of a final order, judgment, or decree of a court, assignments of error may be filed by an appellee who does not appeal, which assignments shall be passed upon by a reviewing court before the final order, judgment, or decree is reversed in whole or in part. The time within which assignments of error by an appellee may be filed shall be fixed by rule of court."

{¶ 87} While this statute more properly explains the concept of a cross-assignment of error, there are two issues to consider. First, I am unaware that any rule has addressed the statutory directive to establish a time within which a cross-assignment of error should be filed, leaving an appellee to wonder.

{¶ 88} Second, the cases interpreting this statute consistently hold that unless the final order, judgment, or decree is reversed in whole or in part, the reviewing court should not address the cross-assignment of error. However, App.R. 12(A)(1) states: [A] court of appeals shall do all of the following: "(c) [u]nless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision." App.R. 12(A) also does not address a cross-assignment of error. If the judgment is affirmed, does the appellate court find the cross-assignment of error moot, or does the rule suggest that the cross-assignment of error should be addressed? Or are we governed by the suggestion in R.C. 2505.22 to pass upon the cross-assignment of error only in the event it prevents reversal of the trial court judgment in whole or part? The bigger question is when a trial court has, in fact, entered a judgment, but for the wrong reason, why would the appellate court not address it? Failure to do so has the potential to perpetuate the influence of bad law in other, similar cases. See *Gay v. O.F. Mossberg & Sons, Inc.,* 11th Dist. No. 2008–P–0006, 2009-Ohio-2954, 2009 WL 1743939, at ¶ 96–141.

{¶ 89} In order to be clear and consistent, the Rules Committee would do well to establish, in accord with the statutory directive, a time deadline for filing a cross-assignment of error and also what is expected of the appellate court with regard to disposition of a cross-assignment of error.

MARY JANE TRAPP, Presiding Judge, concurring in part and dissenting in part.

{¶ 90} I concur in part and dissent in part because I find the claim of the Ohio Association of Public School Employees ("OAPSE") under the second assignment to be meritorious.

{¶ 91} OAPSE is the exclusive representative of the bargaining unit, which includes not just the bus drivers, assistants, and mechanics, but also numerous other classifications of employees employed by the Madison Local School District Board of Education. The transportation personnel were employees in a multi-classification bargaining unit that also included special-education assistants, educational assistants, library assistants, cafeteria personnel, and data processers. OAPSE is the exclusive bargaining representative for all these employees.

{¶ 92} R.C. 4117.06 states: "(A) The state employment relations board shall decide in each case the unit appropriate for the purposes of collective bargaining." Yet the CBS contract in this case effectively severed the classifications of the bus drivers, assistants, and mechanics from the existing collective-bargaining unit. If we interpret R.C. 3319.0810 to permit the board to unilaterally sever the transportation staff from the union, we would have allowed the board to usurp the exclusive jurisdiction of SERB to determine the composition of bargaining units granted by R.C. 4117.06. It is well established that SERB has exclusive jurisdiction to decide matters committed to it pursuant to R.C. Chapter 4117. *Franklin Cty. Law Enforcement Assn. v. Fraternal Order of Police, Capital City Lodge No. 9* (1991), 59 Ohio St.3d 167, 170, 572 N.E.2d 87.

{¶ 93} Under the facts of this case, therefore, when the school district's transportation staff was unionized in a bargaining unit along with other classifications of employees, an interpretation of former R.C. 3319.0810, 151 Ohio Laws, Part II 2868, 3577, that would allow the board to unilaterally sever this classification of employees from the collective-bargaining unit would conflict with the dictates of R.C. 4117.06.

{¶ 94} Statutes concerning the same subject matter must be construed in pari materia. *United Tel. Co. v. Limbach* (1994), 71 Ohio St.3d 369, 372, 643 N.E.2d 1129. Therefore, I believe that R.C. 3319.0810 should be read in harmony with R.C. 4117.06—applicable only when the transportation personnel have not been unionized along with other classifications of employees. As it is within the trial court's power to resolve potential conflicts in the statutes, the trial court should have granted a declaratory judgment regarding the inapplicability of former R.C. 3319.0810 in this case instead of deferring to SERB on this issue.

{¶ 95} The majority finds, "The classifications in the unit remain intact so that if the board decides to bus using its employees, instead of using an outside contract, then they would still be in the bargaining unit." While that may be true

in theory, in practice, it is illusory. What use is a classification when its unionized employees are gone? It is like an electrical outlet with no appliances or light fixtures in a house.

{¶ 96} Because I believe the trial court should have declared former R.C. 3319.0810 inapplicable in this case, I respectfully dissent from the portion of the majority's analysis involving this issue.