[Cite as *Morrison v. Renner*, 2011-Ohio-6780.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THOMAS MORRISON | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellant | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | |
| TERRY RENNER | : | Case No. CT2011-0010 |
| | : | |
| Defendant - Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County
Court of Common Pleas, Case No.
CH2009-0411

JUDGMENT:                      AFFIRMED

DATE OF JUDGMENT:         December 19, 2011

APPEARANCES:

For Plaintiff-Appellant

THOMAS MORRISON, Pro Se
107 Marklan Road
Newark, OH 43056

For Defendant-Appellee

W. ANDREW JOSEPH
44 South 6th Street
P. O. Box 970
Zanesville, OH 43702

*Delaney, J.*

{¶1} Plaintiff-Appellant Thomas Morrison appeals the February 17, 2011 judgment of the Muskingum County Court of Common Pleas granting summary judgment in favor of Defendant-Appellee Terry Renner.

### STATEMENT OF THE FACTS AND CASE

{¶2} On March 26, 2009, Morrison filed a complaint against Renner in the Muskingum County Court of Common Pleas. In his complaint, Morrison alleged tortious interference with a business relationship against Renner and demanded damages in excess of $15,000.

{¶3} On July 27, 2010, Renner filed a motion to dismiss for failure to state a claim. After a hearing held on September 10, 2010 and by judgment entry on September 20, 2010, the trial court converted the motion to dismiss to a motion for summary judgment. Renner filed a motion for summary judgment on October 6, 2010. Morrison filed a response to Renner's motion for summary judgment and filed a separate motion for summary judgment on November 1, 2010. The following facts giving rise to the case come from Morrison's complaint and the motions for summary judgment.

{¶4} Morrison owned a home located at 449 Brighton Blvd., Zanesville, Ohio. Morrison listed the home for sale with a real estate agent. There is no information in the record as to the price Morrison listed the home. Renner owns the home next door to 449 Brighton Blvd.

{¶5} Attached to Morrison's complaint was a letter from Rebecca R. Flexter. (Complaint, "Exhibit A"). The letter stated that on or before July 8, 2007, Rebecca R.

Flexter conducted an Internet search and viewed the 449 Brighton home for sale online. Flexter did not contact Morrison's real estate agent or Morrison about the home before she and her mother went to see the home on July 8, 2007. Flexter and her mother walked around the home and looked in the basement windows. Flexter stated that during her visit to the home, Renner came out and spoke with Flexter and her mother. According to Flexter, Renner criticized the home causing Flexter and her mother to leave and lose interest in the home. At the conclusion of the letter, Flexter stated, "I would have offered 42,500.00 for this home if not for Neighbor #2 [Renner]." (Complaint, "Exhibit A").

{¶6} On or about September 15, 2007, Morrison entered into a contract to sell the 449 Brighton home for $50,000.00 to Tandy Knox. Morrison and Knox completed the sale of the property on November 5, 2007.

{¶7} Pursuant to the Stipulation of Facts filed by the parties, Morrison's mortgage loan for the home was with Century National Bank in the amount of $31,000.00 at the time in question. Morrison's regular payment amount for the mortgage was $322.83. Morrison made a regular mortgage payment on July 9, 2007, August 3, 2007, September 10, 2007, and October 9, 2007. Morrison paid off the loan in the amount of $28,448.29 on November 7, 2007.

{¶8} On February 17, 2011, the trial court granted summary judgment in favor of Renner.

{¶9} It is from this decision Morrison now appeals.

## ASSIGNMENTS OF ERROR

{¶10} Morrison raises six Assignments of Error:

{¶11} "I. TRIAL COURT IGNORED OR FAILED TO FIND FOR TORTIOUS CONDUCT. IT HAS BEEN DETERMINED BY THE 11TH DIST. APP. COURT THAT A CLAIM FOR TORTIOUS CONDUCT HAS NO EFFECT ON WHETHER A PROPERTY CAN OR CANNOT BE SOLD AT A LATER DATE. HOWEVER, THE TRIAL COURT DECIDED NOT TO AGREE OR IGNORE THE DECISION IN DEER LAKE MOBILE PARK V. WENDEL. 2003-OHIO-6981 (OHIO APP. DIST. 11 12/22/2003). (¶ 22 OF AFOREMENTIONED CASE).

{¶12} "II. IT IS FAIRLY APPARENT THAT THE TRIAL COURT DID NOT TAKE INTO CONSIDERATION WHAT THE AFFIANTS SAID IN THEIR AFFIDAVIT #1, IN RENDERING ITS DECISION. THE JUDGE SHOULD NOT HAVE IGNORED THE R. 56 EVIDENCE PRESENTED IN THE APPELLANTS MOTION FOR SUMMARY JUDGMENT AND AGAINST APPELLEE'S MOTION FOR SUMMARY JUDGMENT (SEE AFFIDAVIT ATTACHED TO COMPLAINT, DOCKET #78, PAGES 1, 2). THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE TERRY RENNER. (SEE PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ITEM 11, LAW AND ARGUMENT, PAGE 2, (A) (SUMMARY JUDGMENT STANDARD) AND PAGE 3. (GENERAL MEDICINE, P.C. V. MORNING VIEW CARE CENTER-PHILADELPHIA, INC., 2004), 2004-OHIO-4669 AND (ABEL ELEVATOR CO. V. COLUMBUS/CENTRAL OHIO BUILDING & CONSTR. TRADES COUNCIL, 1975), 73 OHIO ST. 3D 1, 14.

{¶13} "III. THE TRIAL COURT IGNORED THE MANY TIMES APPELLANT OBJECTED AS IRRELEVANT TO THE EVIDENCE OF PROPERTY SOLD FOR MORE MONEY THAN APPELLANT WOULD HAVE RECEIVED FROM AFFIANTS. THE JUDGE ERRED BY ACCEPTING WRONGLY THE APPELLEE'S OPINION AS TO WHAT THE DAMAGES ARE AS A RESULT OF HIS TORTIOUS CONDUCT. ALSO, THIS ARGUMENT WAS NEVER BROUGHT UP IN THE PLEADINGS AS AN AFFIRMATIVE DEFENSE. (SEE ANSWER; OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, A, B AND C AS IRRELEVANT, FILED 8/10/2010, DOCKET #34, PAGE #1; PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST REQUEST FOR ADMISSION NO. 3 THRU 6 DATED 8/20/2011, PAGE #2, DOCKET #30; PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, FILED 11/1/2010. STATEMENT OF FACTS, ¶2, PAGE 2, DOCKET #13.

{¶14} "IV. JUDGE FOUND FOR APPELLEE BECAUSE HE WAS INTERESTED IN THE ELEMENT OF DAMAGES ONLY AS THE TRANSCRIPT SHOWS ON PAGE 4, LINE 17 FROM THE SEPTEMBER 10TH, 2010, COURT HEARING. (APPELLATE DOCKET #2). THE TRIAL JUDGE ERRED BY REFUSING THE LAWFUL CONSEQUENCE OR DAMAGES AS RESULT OF TORTIOUS CONDUCT. THEREFORE, ALLOWING APPELLEE TO GET OFF FROM HIS CONDUCT WITH NO CONSEQUENCES. JUDGE DID NOT HOLD APPELLEE ACCOUNTABLE FOR TORTIOUS CONDUCT. SEE PAGE 4, PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ¶ 2 UNDER DAMAGES.

{¶15} "V. THE TRIAL JUDGE DID NOT TAKE INTO ACCOUNT THE **MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.** THE TRIAL JUDGE ERRED BY IGNORING OR REFUSING TO GIVE ACCOUNT OR HEED TO THE OVERWHELMING MANIFEST AND SUFFICIENCY OF THE EVIDENCE. ON REVIEW FOR MANIFEST WEIGHT, A REVIEWING COURT IS TO EXAMINE THE ENTIRE RECORD, WEIGH THE EVIDENCE AND **ALL REASONABLE INFERENCES**…(SEE STATE OF OHIO V. CLAYPOOL, HOLMES COUNTY, FIFTH APPELLATE DISTRICT, CASE NO. 11CA0063, ¶6 LINE 7). THE TRIAL JUDGE EVIDENTLY DID NOT TAKE THE AFOREMENTIONED FACTORS INTO ACCOUNT IN RENDERING SUMMARY JUDGMENT FOR THE APPELLEE.

{¶16} "VI. DAMAGES FOR THE APPELLANT IN THE AMOUNT OF $42,500 FOR WHAT HE LOST BECAUSE OF APPELLEE'S TORTIOUS CONDUCT; DAMAGES IN THE AMOUNT OF $17,556 FROM MORTGAGE PAYMENTS MADE TO TWO BANKS ON THE PROPERTY AT 449 BRIGHTON BLVD. FOR THE 4 YEARS AS APPELLEE RELATED TO AT ID., PAGE 2."

**I., II., III., IV., V., VI.**

{¶17} We will consider Morrison's Assignments of Error together because they argue in total the trial court erred in granting summary judgment in favor of Renner. Summary judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211, 663 N.E.2d 639:

{¶18} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be

litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."

{¶19} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶20} The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another. *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995). The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations not yet reduced to a contract. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.,* 148 Ohio App.3d 596, 604, 2002-Ohio-3932, 774 N.E.2d 775 (3rd Dist.).

{¶21} In this case, we find that Morrison is alleging an intentional interference with a business relationship because no contract existed between Morrison and Flexter. The elements of tortious interference with a business relationship are: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Gen. Medicine, P.C. v. Morning View Care Ctr.*, 5th Dist. No. 2003AP12-0088, 2004-Ohio-4669, ¶48 citing *Diamond Wine & Spirits, Inc.,* supra, at ¶23.

{¶22} Morrison's complaint alleges that but for Renner's intentional interference, Flexter would have offered Morrison $42,500.00 for the home. Because of Renner's intentional interference, Morrison claims Flexter did not make the offer on July 8, 2007 and therefore he suffered damages from the lack of the offer. Renner argues Morrison's claim there was a prospective business relationship between Morrison and Flexter is too tenuous to survive summary judgment. Renner utilizes *Leibovitz v. Central Natl. Bank*, 75 Ohio App.25, 60 N.E.2d 727 (8th Dist. 1944) for the proposition that there must be a definite proposal to enter into a contract, which is sufficiently definite to be capable of acceptance. Further, "[t]he doctrine being well established that an action in tort will lie for a wrongful interference with performance of an executory contract, the same principle will sustain an action for wrongfully preventing one from entering into a contract, where the evidence establishes with sufficient clearness that but for such interference, the contract would have been made*." Leibovitz v. Central Natl. Bank*, 75 Ohio App.25, 26, 60 N.E.2d 727 (8th Dist. 1944).

{¶23} Renner states that the alleged prospective business relationship between Flexter and Morrison does not meet the standard set in *Leibovitz*. Morrison's responses to Renner's first request for admissions submitted as Civ.R. 56 evidence show that at the time Flexter viewed the home, she had not spoken to Morrison or his real estate agent about the home. Attached to Morrison's complaint, Flexter wrote a notarized letter to Morrison on August 24, 2007 stating what occurred on July 8, 2007. Included in the letter was a written statement that she would have offered $42,500.00 to Morrison for the home, but for Renner's conduct. She states in the letter that after July 8, 2007, Flexter's mother contacted Morrison's realtor, but Flexter did not speak with the realtor.

{¶24} Reviewing the motions in a light most favorable to Morrison, the non-moving party, we find that there is a genuine issue of material fact as whether there was a prospective business relationship between Flexter and Morrison and whether Renner's conduct on July 8, 2007 interfered with the prospective business relationship. In *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 81 Ohio App.3d 591, 611 N.E.2d 955 (9th Dist. 1992), the court held that "the common-law right of action protects *all* advantageous business relations, real or potential, from improper interference. See 45 American Jurisprudence 2d (1969) 285, Interference, Section 7. A legally binding agreement is not a prerequisite to recovery. *Pacific Gas & Elec. Co. v. Bear Stearns & Co.* (1990), 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 4, 791 P.2d 587, 590; *Am. Med. Internatl., Inc. v. Giurintano* (Tex.App.1991), 821 S.W.2d 331, 335."

{¶25} However, Renner also argues there is no genuine issue of material fact that Morrison did not suffer actual damages from Renner's alleged conduct on July 8,

2007, due to Morrison accepting an offer on September 15, 2007 to sell the home for $50,000.00. We agree.

{¶26} Damages are the fourth element of the tort of intentional interference with a business relationship. The Ninth District Court of Appeals in *Akron-Canton Waste Oil, Inc.*, supra, explained the possible damages under the tort of intentional interference with a business relationship. "A plaintiff is entitled to restitution for any pecuniary loss which naturally and proximately results from such intentional misconduct. *Louis Kamm, Inc. v. Flink* (N.J.1934), 175 A. 62, 66. It must be observed, however, that *actual* damages are required. *Richland Natl. Bank & Trust v. Swenson* (1991), 249 Mont. 410, 418, 816 P.2d 1045, 1051; *Galloway v. Travelers Ins.* Co. (Miss.1987), 515 So.2d 678, 682-683. The law simply does not allow recovery for innocuous or unsuccessful interference. *Am. Med. Internatl., Inc. v. Scheller* (Fla.App.1984), 462 So.2d 1, 9."

{¶27} In *Gray-Jones v. Energy Marketing Services, Inc.*, 137 Ohio App.3d 93, 738 N.E.2d 64 (10th Dist. 2000), the Tenth District Court of Appeals used the Restatement of the Law 2d, Torts (1979) 54, Section 774A(1) to quantify damages:

{¶28} "'(1) One who is liable to another for interference with a contract or a prospective contractual relation is liable for damages for

{¶29} "'(a) the pecuniary loss of the benefits of the contract or the prospective relation;

{¶30} "'(b) consequential losses for which the interference is a legal cause; and

{¶31} "'(c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.'

{¶32} "Comment *b* to Section 774A explains that, when the interference was with a prospective contract, the plaintiff is entitled to recover the lost profit expected to be made under the contract. Additionally, Ohio law recognizes that a plaintiff may recover all damages proximately caused by an actor's misconduct in a tortious interference action. See, *e.g., Brookeside Ambulance, Inc. v. Walker Ambulance Serv.* (1996), 112 Ohio App.3d 150, 157–158, 678 N.E.2d 248, 252–253."

{¶33} Morrison alleges he suffered in excess of $15,000.00 in actual damages because of Renner's interference with his prospective business relationship with Flexter. Morrison argues he would have sold the home sooner if Flexter had made her offer. Flexter states in her August 24, 2007 letter, she would have offered Morrison $42,500.00 for the home. Flexter does not state what date she would have made the offer to Morrison.

{¶34} On September 15, 2007, Morrison entered into a contract with Knox to sell the home for $50,000.00. The sale was completed on November 5, 2007. The $50,000.00 sale price was $7,500.00 more than Flexter's proposed offer of $42,500.00.

{¶35} The only Civ.R. 56 evidence presented as to Morrison's claims for damages was Morrison's mortgage loan payments for the home. Morrison made a regular mortgage payment for the home on July 9, 2007, August 3, 2007, September 10, 2007, and October 9, 2007. Morrison's regular payment amount for the mortgage was $322.83. Therefore, the mortgage payments made by Morrison, calculating from Flexter's visit to the eventual sale of the property to Knox, was $1,291.32. Morrison paid off the mortgage loan on November 7, 2007.

{¶36} Based on this evidence, we find that reasonable minds can only conclude that Renner's alleged interference with Morrison's prospective business relationship with Flexter did not cause Morrison actual damages. The difference between the two offers was $7,500.00. By accepting Knox's later offer, Morrison was required to make $1,291.32 in mortgage payments, which resulted in a $6,208.68 profit to Morrison from having accepted Knox's, not Flexter's, offer.

{¶37} Our de novo review of the parties' motions for summary judgment shows that Renner is entitled to judgment as a matter of law on the Morrison's claim of intentional interference with a prospective business relationship based on the necessary element of damages. Morrison's Assignments of Error are overruled.

{¶38} The judgment of the Muskingum County Court of Common Pleas is affirmed.

By: Delaney, J.

Hoffman, P.J. and

Farmer, J. concur.

_____
HON. PATRICIA A. DELANEY


_____
HON. WILLIAM B. HOFFMAN


_____
HON. SHEILA G. FARMER

[Cite as *Morrison v. Renner*, 2011-Ohio-6780.]

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THOMAS MORRISON | : | |
| | : | |
| Plaintiff-Appellant | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TERRY RENNER | : | |
| | : | |
| Defendant-Appellee | : | CASE NO. CT2011-0010 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio is affirmed. Costs to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER