[Cite as *Parrott v. Jones*, 2014-Ohio-3220.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| DANNY L. PARROTT | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 13-CA-110 |
| | : | |
| WILLIAM JONES | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Licking County Court of
                             Common Pleas, Case No. 11 CV 01371



JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      July 18, 2014



APPEARANCES:

For Plaintiff-Appellant:                For Defendant-Appellee:

JOHN T. RYERSON                         DANIEL G. PADDEN
2546 Indianola Ave.                     Tribbie, Scott, Plummer & Padden
Columbus, OH 43202                      139 West 8th Street
                                        P.O. Box 640
                                        Cambridge, OH 43725-0640

*Delaney, J.*

{¶1} Plaintiff-Appellant Danny L. Parrott appeals the October 30, 2013 judgment entry of the Licking County Court of Common Pleas.

### FACTS AND PROCEDURAL HISTORY

{¶2} On March 13, 2009, Plaintiff-Appellant Danny L. Parrott filed a complaint in the Licking County Court of Common Pleas against Defendant-Appellee William Jones. The complaint alleged that Jones, a former business partner of Parrott, intentionally interfered with Parrott's business relationships, causing Parrott to lose business income from 2005 to 2008. Parrott alleged Jones's intentional interference consisted of an email sent in March 2005 to a business associate and a verbal communication with a business associate. Parrott voluntarily dismissed the complaint and he refiled the complaint on October 14, 2011. The trial court overruled a motion for summary judgment and the matter was heard at a bench trial on August 29, 2013. The following evidence was adduced at trial.

{¶3} In 1999, Parrott and Donald Ursitz entered into a Joint Venture Agreement where Ursitz invested $50,000 and had a one-third ownership in a project to develop and promote a programmable scrape dipper known as the "Scrape Wiz." The product was an electronic scrape dipper that dripped urine to aid in deer hunting.

{¶4} In 2000, Jones became acquainted with Parrott. Jones, a deer hunter, was interested in hunting-related products developed and marketed by Parrott. Parrott was a well-known speaker at deer and turkey hunting expositions where Parrott would sell his hunting-related products. Parrott stated that his speaking engagements and product sales produced an income in excess of $80,000 per year.

{¶5}   Jones invested $150,000 for a ten percent ownership of the joint venture in the Scrape Wiz. Jones believed that Parrott would market the Scrape Wiz and provide him with financial statements and tax documents.

{¶6}   On September 12, 2003, Jones and Ursitz filed a complaint in the Guernsey County Court of Common Pleas naming Parrott and his corporations as defendants. The complaint alleged breach of fiduciary duties, conversion, spoliation, and civil conspiracy based on the failure of the Scrape Wiz to return a profit. Parrott's corporation filed bankruptcy and Jones and Ursitz ultimately dismissed their complaint.

{¶7}   On March 14, 2005, Jones sent an email to Chris Harstine, a loan officer with the Home Loan Savings Bank in Coshocton, Ohio. Harstine was a friend of Jones. The email stated in part:

> You should check out public information about Mr Parrott – he has been sued by many former business partners including me and had had a myriad of judgments over the years and two foreclosures (one pending) at least because he has an awful habit of taking someone's money under the guise of a legitimate investment, and then never fulfilling his word or written pledge on the use of the money. you can easily run a lien report on his addresses, present and past, and that alone will show you some interesting information…..I am a business owner and the father of five children- I invested a large sum of money with Dishonorable Danny 5-6 years ago and never got one report, one financial statement, one tax return, not one dime back. He hasn't even filed tax returns on his various companies or himself for years so none of his investors can even write it

off because of his dishonorable ways. * * * Email me back if anyone at your lodge is interested in lawsuit case numbers and the myriad of creditors he is currently running from. Don't steer your lodge members to this man or promote him in any way – if you have any sort of code of conduct at all there is no way on God's green earth he could meet it.

{¶8}   Harstine, as a loan officer with Home Loan Savings Bank, did not have an existing business relationship with Parrott at the time the email was sent.

{¶9}   Jones's email to Harstine was sent to Mark Bernardin, the Manager of Program Development with the Grand Lodge of F&AM of Ohio, a Masonic organization. There was conflicting evidence whether Jones intentionally or mistakenly sent the email to Bernardin.

{¶10} At the time of the email to Bernardin, Parrott was involved with a Masonic-sponsored camp for underprivileged children called Capstone Camp for Kids. Bernardin was responsible for the web page for the Grand Lodge and was one of the lead members involved with Capstone Camp for Kids. Parrott testified the people above Bernardin in the Masonic organization "backed off" but his relationship with Capstone ended when Bernardin was no longer with the organization.

{¶11} Jones testified he also spoke to Kirk Thomas of the National Wild Turkey Foundation regarding Parrott. Jones stated he told Thomas of his experience with Parrott and warned him to be careful. Jones stated he did not think that Parrott and Thomas had a business relationship.

{¶12} Parrott testified that after Jones's communications, Parrott began to lose business relationships, including with National Wild Turkey Federation and Erie

Promotions, Inc. He stated he lost speaking engagements and the related product sales from those speaking engagements, costing Parrott sizable sums of money from 2005 through 2008. At trial, Parrott presented income tax returns from 2000 to 2004. Parrott's adjusted gross income was $13,106.00 in 2000. In 2001, his income was $70,378. In 2002, his income was $14,498.00. In 2003, Parrott's gross income was $2,719.00. In 2004, Parrott's gross income was $6,465.00. Parrott did not produce his income tax returns from 2005 to 2008 because he testified the records were unavailable.

{¶13} Sam Concilla, CEO of Erie Promotions, Inc., testified by deposition. He worked with Parrott and hired Parrott to do speaking engagements at different hunting and fishing shows. Their business relationship ended in 2004. Concilla did not know Jones and had never spoken to Jones, but Concilla had spoken with Ursitz and knew that Ursitz had been spreading rumors regarding Parrott. Concilla testified that the outdoor industry was very tight and if a reputable sportsman loses respect, they are blackballed by the industry.

{¶14} In 2009, Parrott was convicted of violations of the Lacey Act. He was found guilty of conspiracy and violating federal laws in 2005 for interstate shipment of live deer that had not been tested for disease. He was sentenced to 21 months in prison. Parrott conceded that his conviction in 2009 hurt his business relationships at that point in time.

{¶15} At the conclusion of the evidence, the parties submitted written closing arguments. On October 30, 2013, the trial court issued its judgment entry finding in favor of Jones. The trial court found the preponderance of the evidence presented demonstrated that Parrott's business relationships began to sour before Jones's email

in 2005 and that the email was not intentionally sent to anyone with whom Parrott had a business relationship. The trial court found that Parrott could not prove a loss of income due to Jones's actions.

{¶16} It is from this judgment Parrott now appeals.

## ASSIGNMENTS OF ERROR

{¶17} Parrott raises two Assignments of Error:

{¶18} "I. THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLANT HAD ESTABLISHED EVERY ELEMENT OF INTENTIONAL INTERFERENCE WITH A BUSINESS RELATIONSHIP.

{¶19} "II. THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLANT WAS FINANCIALLY DAMAGED AS A RESULT OF APPELLEE'S INTENTIONAL INTERFERENCE WITH HIS BUSINESS RELATIONSHIPS."

## ANALYSIS

### I. and II.

{¶20} We consider Parrott's first and second Assignments of Error together as they both concern the elements of the tort of interference with a business relationship. Parrott argues the trial court erred in finding Parrot failed to establish by a preponderance of the evidence the tort of interference with a business relationship. We disagree.

### Standard of Review

{¶21} This matter was resolved by a trial to the court. In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, the Ohio Supreme Court clarified the standard of review appellate courts should apply when assessing the manifest

weight of the evidence in a civil case. *SST Bearing Corp. v. Twin City Fan Companies, Ltd.*, 1st Dist. Hamilton No. C110611, 2012–Ohio–2490, ¶ 16. The Ohio Supreme Court held the standard of review for manifest weight of the evidence for criminal cases stated in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), is also applicable in civil cases. *Eastley*, at ¶ 17–19, 972 N.E.2d 517. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley*, at ¶ 20 quoting *Twearson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001); *See also Sheet Metal Workers Local Union No. 33 v. Sutton*, 5th Dist Stark No.2011 CA00262, 2012–Ohio–3549 citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "In a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Eastley*, at ¶ 19.

{¶22} "In weighing the evidence, the court appeals must always be mindful of the presumption in favor of the finder of fact. In determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the findings of fact. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Easterly,* at ¶ 21,

citing *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

{¶23} "Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." *Easterly,* at ¶ 12, citations omitted.

<u>Tort of Interference with a Business Relationship</u>

{¶24} The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another. *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 651 N.E.2d 1283 (1995). The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations not yet reduced to a contract. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co., Inc.,* 148 Ohio App.3d 596, 604, 2002–Ohio–3932, 774 N.E.2d 775 (3rd Dist.).

{¶25} The elements of tortious interference with a business relationship are: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom. *Morrison v. Renner*, 5th Dist. Muskingum No. CT2011-0010, 2011-Ohio-6780, ¶ 21 citing *Gen. Medicine, P.C. v. Morning View Care Ctr .,* 5th Dist. Tuscarawas No. 2003AP12–0088, 2004–Ohio–4669, ¶ 48.

{¶26} The trial court found Parrott failed to demonstrate by a preponderance of the evidence that his business relationships were damaged by Jones's communications. The trial court first found Parrott's alleged business relationships were in a poor state of affairs as evidenced by the 2003 lawsuit and Parrott's 2009 felony conviction based on conduct that occurred in 2005. The trial court next found there was no evidence that Parrott suffered a loss of business income due to Jones's communications.

{¶27} We have reviewed the trial transcript, submitted depositions, and exhibits in this case. The trial court's judgment that Parrott failed to establish the elements of tortious interference with a business relationship is not against the manifest weight of the evidence. The first element is the existence of a prospective business relationship. Parrott testified that Jones's email and verbal communication with Mark Bernardin and Kirk Thomas ruined his business relationships with the Capstone Camp for Kids and the National Wild Turkey Federation. Parrott's testimony, however, was vague as to the manner of his relationships with those organizations. As to Capstone Camp for Kids, Parrott testified that he was very much involved with the Capstone Camp for Kids. (Trial Tr., p. 61). He also testified he had a relationship with the Grand Lodge of Ohio. (Trial

Tr., p. 61). There was no testimony, however, as to the nature of Parrott's relationship with the Grand Lodge of Ohio or how Parrott was involved with the Capstone Camp for Kids.

{¶28} Parrott also testified that he had a relationship with Kirk Thomas of the National Wild Turkey Foundation. Thomas promoted the Wheelin' Sportsmen, a disabled outdoor sportsman organization. (Trial Tr., p. 37). Parrott testified he received a national award at the National Wild Turkey Federation Convention for his contributions. (Trial Tr., p. 37). Parrott's attorney asked Parrott, "did you have a business relationship with Mr. Thomas?" Parrott answered, "[w]e communicate with each other. I want to get back into supporting." (Trial Tr., p. 37).

{¶29} Based on this record, we cannot say Parrott provided credible and competent evidence to the trial court to demonstrate the first element, the existence of a business relationship or a prospective business relationship.

{¶30} The final element of the tort of interference with business relationship is the existence of damages. The trial court found Parrott failed to prove by a preponderance of the evidence that he was damaged by Jones's communications. Parrott argued he was earning $80,000 annually for his speaking engagements and related product sales. The income tax returns Parrott provided as evidence failed to demonstrate that level of income. Parrott's testimony as to lost income was not supported by the greater amount of credible evidence.

{¶31} Because Parrott failed to demonstrate each element of the tort of interference with a business relationship, we find the trial court did not err in entering judgment in favor of Jones.

{¶32} Parrott's first and second Assignments of Error are overruled.

**CONCLUSION**

{¶33} The judgment of the Licking County Court of Common Pleas is affirmed.

By: Delaney, J.,

Farmer, P.J. and

Wise, J., concur.