**PIETZ; Pietz et al., Appellants,**

v.

**TOLEDO TRUST COMPANY et al., Appellees.**

[Cite as *Pietz v. Toledo Trust Co.* (1989), 63 Ohio App.3d 17.]

Court of Appeals of Ohio,
Lucas County.

L–88–179.

Decided May 19, 1989.

18

Joseph P. Jordan, for appellants.
Steven R. Smith, for appellees.

ABOOD, Judge.

This is an appeal from the judgment entered by the Lucas County Court of Common Pleas in favor of defendants-appellees upon their motions to dismiss and for summary judgment.

Appellants set forth the following assignments of error:

"1. The Court below erred in granting summary judgment for the defendants based on the determination by that court that damages were entirely speculative.

"2. The trial court erred in granting defendants' motion for summary judgment as to Douglas F. Pietz and Brian J. Pietz, Dr. Pietz's sons, for the reason that their damages were entirely speculative because '[t]he sons were not named as heirs of Dr. Pietz, and so long as their mother lives, they are not heirs of their mother: "no one is the heir of the living." '

"3. The court erred in finding that the acts of the Toledo Trust were within the scope of permissible trust function and that the Toledo Trust Company was not engage [*sic*] in the unauthorized practice of law and on that basis granting summary judgment in favor of the Toledo Trust and against the plaintiffs on authority of *Green v. Huntington National Bank* (1965), 4 Ohio St.2d 78, [33 O.O.2d 442, 212 N.E.2d 585], syllabus 3.

"4. The trial court erred in concluding that Toledo Trust Company was protected by the rationale of *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74 [512 N.E.2d 636].

"5. The trial court erred in granting defendants' [*sic*], Mr. Chabler [*sic*], motion for summary judgment in total because the complaint alleges that the defendants acted negligently or intentionally to cover their original negligence, in failing to advise plaintiffs that the original negligence could be cured by timely exercise of a qualified disclaimer.

"6. The trial court erred in granting defendants [*sic*] motions for summary judgment because at the very least there was a genuine issue of material fact as to whether the conduct of Toledo Trust Company and Mr. Chabler acting together was not intentionally done to prevent the beneficiaries of the estate from discovering the original negligence in taking the appropriate steps to correct it and that such conduct be the basis for actual and punitive damages."

The facts giving rise to this appeal are as follows: On January 2, 1964, Dr. Jack Pietz, husband of appellant Phyllis M. Pietz and father of appellants Douglas and Brian Pietz, executed a trust agreement with appellee, the Toledo Trust Company. On February 13, 1975, Dr. Pietz executed a document entitled "Present Operating Agreement To Original Trust Agreement with

The Toledo Trust Company," which amended and, in effect, superseded the original trust agreement. The pertinent provisions of the present operating agreement provided for Dr. Pietz's estate to be divided into two separate trusts. Trust A was for the sole benefit of Mrs. Pietz and was to be funded with assets from the estate in an amount equivalent to the maximum marital deduction. All of the income was to be distributed to her at least annually, and as much of the principal as the trustee in its sole discretion deemed necessary and expedient. Mrs. Pietz was granted a power of appointment over any of the assets remaining in the trust upon her death. If that power was not exercised, then the remaining assets would first be applied to any federal and state tax liability and then distributed to Trust B. Trust B was for the benefit of Mrs. Pietz and the two sons. The net income and, if necessary, as much of the principal as the trustee in its sole discretion deemed necessary or advisable, were to be distributed for the comfort, care and support of Mrs. Pietz and/or the two sons, and for the education of the sons, after first taking into consideration all other sources of income. No distribution of principal was to be made to Mrs. Pietz, however, until the assets of Trust A were exhausted. The trust agreement also set forth provisions for the distribution of Trust B upon Mrs. Pietz's death. On the same date that he executed the present operating agreement, Mr. Pietz executed his last will and testament which bequeathed the bulk of his estate to Toledo Trust as trustee of the existing trust agreement.

In the spring of 1983, Dr. Pietz, then terminally ill, approached his attorney, appellee Alan J. Chabler, to inquire if any changes were needed in his will due to the recent changes in estate tax law. Chabler told Dr. Pietz that he would look into the matter and contacted Alan Brogan at Toledo Trust. Brogan had previously advised Chabler that the trust group at Toledo Trust offered estate planning services to attorneys. On June 29, 1983, in response to Chabler's inquiries, Brogan forwarded to Chabler a proposed draft of an amendment to Dr. Pietz's trust agreement. Chabler subsequently presented the proposed amendment to Dr. Pietz who executed it on July 15, 1983. The effect of the amendment was to interpret the term "maximum marital deduction" used in the trust agreement to mean the "unlimited marital deduction" as provided by I.R.C. Section 2056 as amended by the Economic Recovery Tax Act of 1981.

Dr. Pietz died on September 17, 1984, and pursuant to his will and the trust agreement, as amended on July 15, 1983, all of his estate assets went into Trust A for the benefit of Mrs. Pietz. Toledo Trust was named trustee and ultimately became administrator *de bonis non* W/W/A of the estate. Chabler was hired by Toledo Trust as attorney for the estate.

On April 30, 1987, appellant Mrs. Pietz and appellants Douglas and Brian Pietz brought suit against Toledo Trust and Chabler in case Nos. 87–1421 and

87–1422, respectively. Both complaints alleged that Chabler, as Dr. Pietz's attorney, and Toledo Trust were negligent in both the preparation of the July 15, 1983 trust amendment and in the giving of tax advice, and as a result of this negligence all of Dr. Pietz's assets went into Trust A when in fact Dr. Pietz's intent was to put at least $325,000 into Trust B. The complaints alleged further that both Chabler and Toledo Trust negligently and/or intentionally failed to advise appellants of this error and the adverse tax consequences that could result therefrom. Both complaints also alleged that Toledo Trust had engaged in intentional and commercial unauthorized practice of law. Mrs. Pietz claimed that she was damaged in that a portion of her estate would now be subject to tax on her death which would not have been taxed had Dr. Pietz's intentions been carried out. The sons claimed that they were damaged by the loss of their inheritance and the loss of certain tax advantages. All three prayed for compensatory damages for the alleged negligence, malpractice and unauthorized practice of law, and for punitive damages for intentional failure to disclose. Toledo Trust and Chabler filed their answers and on July 31, 1987, Chabler filed a cross-claim against Toledo Trust for indemnification to which Toledo Trust filed an answer on August 11, 1987.

On July 10, 1987, in case No. 87–1422, Toledo Trust filed a motion for partial summary judgment as to the sons' claims of unauthorized practice of law and intentional malice. On that same date, in case No. 87–1421, Toledo Trust filed a motion to dismiss Mrs. Pietz's claims of negligence and a motion for summary judgment as to her claims of unauthorized practice of law and intentional malice. On August 21, 1987, Mrs. Pietz filed a memorandum in opposition to Toledo Trust's motion to dismiss. On October 5, 1987, in case No. 87–1422, Toledo Trust filed a motion for summary judgment as to the sons' negligence claims on the basis that damages were speculative and that there was a lack of privity. On November 3, 1987, Chabler filed motions for summary judgment in both cases as to all of the claims against him on the basis of lack of privity and speculative damages. On November 12, 1987, Mrs. Pietz and the sons together filed one memorandum in opposition to all of the motions filed by Toledo Trust and Chabler. On May 24, 1988, the trial court consolidated the two cases and issued its judgment entry which granted judgment for Toledo Trust and Chabler on all of their motions, dismissed both complaints in their entirety and dismissed Chabler's cross-claim.

## I

In their first assignment of error, appellants, Douglas Pietz and Brian Pietz, assert that the trial court erred in granting summary judgment for appellees on the basis that damages were speculative.

Preliminarily, it must be noted that Toledo Trust's motions for summary judgment as to the sons' claims of negligent/intentional conduct were on the basis that damages were speculative; Chabler's motions for summary judgment as to all three appellants' claims of negligent/intentional conduct were on the basis that damages were speculative; while Toledo Trust's motion to dismiss Mrs. Pietz's claims of negligent/intentional conduct was on the basis that she *sustained no damage.* The trial court found that Mrs. Pietz suffered no damage and that the sons' claims for damages were speculative. Appellants did not appeal the trial court's findings as to Mrs. Pietz. Therefore, this assignment of error is only as to appellants Douglas Pietz and Brian Pietz.

Appellants argue that if Dr. Pietz had accomplished what he had intended, substantial tax savings would have resulted and they would have been entitled to the income and ultimately the unrestricted principal from Trust B. Appellants submit, therefore, that damages are certain, not speculative, and can be calculated with certainty.

Appellee, Toledo Trust, argued in the trial court in support of its motion for summary judgment as to appellants' claims of negligent and/or intentional conduct that there was no evidence before the court of any actual damages sustained by appellants, or even any evidence tending to raise an issue of fact as to whether or not they would sustain actual damage. Toledo Trust contended that the evidence that was before the trial court showed that appellants' claims of lost inheritance and lost tax advantages were based upon conjecture and numerous contingencies which may never occur and therefore their damage claims were entirely speculative, precluding recovery. Appellee Chabler argued similarly that such speculative claims for damages do not give standing to sue.

Appellants argued in the trial court in opposition to these motions that but for the appellees' conduct, Trust B would have been funded and Dr. Pietz's sons would be the beneficiaries of a trust corpus of approximately $400,000.

The general rule for the recovery of compensatory damages is that injury and the resulting damage must be shown with certainty and not be left to conjecture and speculation. *Swartz v. Steele* (1974), 42 Ohio App.2d 1, 5, 71 O.O.2d 46, 48, 325 N.E.2d 910, 913–914. It is uncertainty as to the *existence* of damages, not uncertainty as to the amount, which precludes recovery. *Accurate Die Casting Co. v. Cleveland* (1981), 2 Ohio App.3d 386, 391, 2 OBR 459, 464–465, 442 N.E.2d 459, 464–465. Injury or damage is a necessary element of a cause of action for negligence, without which summary judgment can be granted. *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 24 OBR 403, 494 N.E.2d 1091.

█ The evidence that was before the trial court on appellees' motions for summary judgment that pertains to the issue of whether or not appellants' claims for damages are speculative consisted of the trust agreement itself and the appellants' answers to Toledo Trust's interrogatories concerning the provisions of the trust agreement. There was no other evidence presented by either side on this issue.

Upon close examination of the trust agreement, it is clear that under its terms, Mrs. Pietz could ultimately have access to both the income and the principal of both trusts and could conceivably exhaust the assets of both, leaving nothing in Trust B for the sons; under the provisions of Trust B, the sons are not automatically entitled to income or principal distributions in specific amounts and it is not possible to determine at this time if the amount they may ultimately receive is more or less than it would have been if Trust B had been funded directly. Concerning any adverse tax consequences, the extent of any tax liability to the sons depends upon the amount of Mrs. Pietz's estate *at her death* and the tax laws in effect at that time.

Upon consideration of all the evidence relevant to this assignment of error, this court finds that, when construing that evidence in a light most favorable to appellants, the only lawful inference that can be drawn is that the existence of any damages incurred by the sons as a result of the actions of Chabler and Toledo Trust is necessarily speculative. Because their claims for damages are speculative, appellants are precluded from any recovery on their causes of action for negligence and intentional misconduct. We therefore find that appellees are entitled to judgment as a matter law as to appellants' claims of negligent and/or intentional conduct and appellants' first assignment of error is not well-taken.

## II

In their second assignment of error, appellants assert that the trial court erred in finding that damages were speculative because the sons were not heirs of Dr. or Mrs. Pietz. From our review of the trial court's judgment entry, we find that the trial court's comment alluding to the sons' status as heirs was not necessarily the basis for its finding that appellants' damage claims were speculative. For the reasons stated in this court's assignment of error No. I herein, appellants' second assignment of error is not well-taken.

## III

█ In their third assignment of error, appellants assert that the trial court erred in finding that Toledo Trust's conduct was within the scope of permissible trust functions and that it did not engage in the unauthorized practice of

law. Appellants contend that there exists a genuine issue of fact as to whether or not Toledo Trust was engaged in conduct prohibited under *Green v. Huntington Natl. Bank* (1965), 4 Ohio St.2d 78, 33 O.O.2d 442, 212 N.E.2d 585.

Appellee, Toledo Trust, in support of its motions for summary judgment proffered to the trial court the affidavits of Chabler and Brogan wherein they state that there was no direct contact between Toledo Trust and Dr. Pietz or any of the Pietz family concerning the amendment to the trust agreement, and that Toledo Trust's only contact in this matter was with Chabler, at his request. Toledo Trust argued that this uncontroverted evidence demonstrates that its conduct was permissible under *Green, supra.*

Appellants, in opposition to Toledo Trust's motions for summary judgment, did not dispute that Toledo Trust's only contact was with Chabler. Appellants submitted, however, that questions of fact existed as to whether or not Toledo Trust knew Chabler lacked adequate knowledge of trusts and estates and was therefore incapable of performing as an attorney for Dr. Pietz in those trust matters. Appellants argued that by advising Chabler as they did Toledo Trust was in fact acting as an attorney and engaging in the practice of law. In support of these assertions appellants referred generally to the depositions before the court.

In *Green v. Huntington Natl. Bank, supra,* the Supreme Court of Ohio considered the functions of banks and trust companies in the area of estate planning. The *Green* court held that where a bank or trust company provides specific legal information or advice relating to specific facts of a particular estate directly to their customers, with the expectation of profit, it is giving legal advice. 4 Ohio St.2d at 80–81, 33 O.O.2d at 443–444, 212 N.E.2d at 586–587. The *Green* court went on to hold, however, that:

"A bank or trust company does not engage in the practice of law by fully discussing with counsel for a client, who is a customer or a prospective customer of the bank, any and all legal problems involved in the planning or administration of such client's estate." *Id.* paragraph three of the syllabus.

Clearly, the evidence proffered by appellee in support of its motion for summary judgment demonstrates that its conduct was within the permissible scope of conduct as outlined in *Green.* *Green* does not, as appellants assert, impose the requirement that a bank or trust company, when rendering advice or service to counsel for a customer, must first ascertain if that counsel is competent to provide certain legal services to that customer or else risk being held responsible for rendering legal advice themselves.

When considering the evidence that was before the trial court as to this issue in a light most favorable to appellants, we find that there is no genuine

issue as to any material fact and appellee Toledo Trust is entitled to judgment as a matter of law that it did not engage in unauthorized practice of law. Accordingly, appellants' third assignment of error is not well-taken.

IV

In their fourth assignment of error, appellants assert that the trial court erred in concluding that Toledo Trust was protected by the rationale of *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 512 N.E.2d 636. Appellants argue that there is nothing in the decision or rationale of *Simon* to warrant its application in this case, and therefore the decision of the trial court granting appellees' motions for summary judgment must be reversed and remanded for trial.

Although this court has already determined that appellee is entitled to summary judgment on appellants' negligence claims on the grounds that damages are speculative, we will consider this assignment of error.

In *Simon v. Zipperstein, supra,* the beneficiaries of a will brought suit for legal malpractice against the attorney who had prepared their father's will alleging negligence on the part of the attorney in failing to set forth their father's testamentary intent. The Supreme Court of Ohio held that in the absence of fraud, collusion, or malice, an attorney may not be liable in a malpractice action by beneficiaries or purported beneficiaries of a will where there was *no privity between the beneficiaries and the attorney's client. Id.* at 76, 512 N.E.2d at 638.

Appellee, Toledo Trust, in its motions for summary judgment as to appellants' negligence claims argues that the reasoning of *Simon* should be extended to protect it from these negligence claims since the relationship between itself and appellants was more distant than that of the parties in *Simon.* Appellee also argues that the evidence showed that it had no contact with any of the appellants concerning the trust amendment or related tax matters and, therefore, was not in privity with the appellants.

Appellants, in opposition, argue that the facts of the case indicated fraud and malice on the part of Toledo Trust and therefore *Simon* is not applicable. Appellants also contended that Toledo Trust had a fiduciary relationship with them by virtue of the trust agreement.

The issue raised in the trial court by appellee Toledo Trust's motions for summary judgment is whether or not Toledo Trust owed any duty to appellants, the breach of which could give rise to a cause of action for negligence against Toledo Trust.

■ The evidence that was before the trial court demonstrates that Toledo Trust had no contact with and assumed no obligation to Dr. Pietz or any of the appellants concerning the amendment of the trust agreement. Given these undisputed facts it is clear that the issue here is not whether the reasoning of *Simon* should be extended to this case. What is relevant is that the evidence does not show the existence of any legal duty owed to appellants by appellee Toledo Trust. Without a duty owed, there can be no cause of action for negligence against this appellee. As to appellants' assertion that Toledo Trust had a fiduciary obligation to them, any such obligation of Toledo Trust to appellants would be limited to the administration of the trust once it went into operation.

■ In light of the foregoing, and our findings as to appellants' first and second assignments of error, we find that even if we were to determine that the trial court erred in extending the reasoning of *Simon* to this case, it would be harmless error. According appellants' fourth assignment of error is found not well-taken.

## V

■ In their fifth and sixth assignments of error, appellants assert that the trial court erred in granting appellees' motions for summary judgment as genuine issues of material fact exist as to whether appellees acted negligently and/or intentionally in failing to advise appellants as to their original negligence and that it could be cured.

The issues raised by these assignments of error were not raised by appellees' motions for summary judgment, and, therefore, were not before the trial court for determination. In view of this court's finding that appellants' damage claims were speculative, however, appellants would have no right to recovery even if negligent or intentional conduct was shown. Accordingly, appellants' fifth and sixth assignments of error are not well-taken.

Upon consideration whereof, the court finds substantial justice has been done the parties complaining, and judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellants pay court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and CONNORS, J., concur.