[Cite as *Huffman v. Groff*, 2013-Ohio-222.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| Ray Huffman, et al, | : | |
| | : | |
| Plaintiffs-Appellants/ | : | Case No. 10CA54 |
| Cross-Appellees, | : | |
| | : | <u>DECISION AND</u> |
| v. | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| Roxanne Groff, et al, | : | |
| | : | |
| Defendants-Appellees/ | : | Filed:  January 23, 2013 |
| Cross-Appellants. | | |

_____

<u>APPEARANCES:</u>

John P. Lavelle and Robert R. Rittenhouse, Lavelle and Associates, Athens, Ohio, for Appellants/Cross-Appellees.

Robert J. Shostak, Shostak & Hollingsworth, Athens, Ohio, for Appellee/Cross-Appellant Roxanne Groff.

Michael M. Hollingsworth, Shostak & Hollingsworth, Athens, Ohio, for Appellees/Cross-Appellants Stephen W. Groff and Aileen McCormack.

_____

Kline, J.:

{¶1}   Ray Huffman (hereinafter "Ray") appeals the judgment of the Athens County Court of Common Pleas.  Ray appeals both individually and derivatively on behalf of the Hollar Inc. (hereinafter the "Hollar").  The trial court granted summary judgment in favor of Roxanne Groff (hereinafter "Roxanne"), Stephen Groff (hereinafter "Stephen"), and Aileen McCormack (hereinafter "Aileen").  (Hereinafter, we will refer to Roxanne, Stephen, and Aileen collectively as the "Defendants.")  Ray contends that the trial court erred by granting summary judgment on all the individual and derivative

claims in his complaint.  Because there are no genuine issues of material fact regarding any of the claims in Ray's complaint, we disagree.

{¶2}    Additionally, the Defendants cross-appeal the judgment of the Athens County Court of Common Pleas.  Most of the Defendants' assignments of error are not proper in the context of a cross-appeal.  Therefore, we will not address the Defendants' improperly raised assignments.  And because summary judgment was appropriate on all of the claims in the complaint, the properly raised issues in Defendants' cross-appeal are moot.

{¶3}    Accordingly, we affirm the judgment of the trial court.

I.

{¶4}    This case involves a dispute among shareholders of the Hollar regarding the May 2007 sale of Aileen's stock in the corporation.  Prior to the sale, the shareholders were Ray, Roxanne, and Aileen.  Ray and Roxanne each owned a 37.5% interest in the Hollar, and Aileen owned a 25% interest.  (Aileen owned 1.5 shares of Hollar stock, and Roxanne and Ray each owned 2.25 shares.)  Roxanne served as president of the Hollar, and Ray served as the Secretary-Treasurer.

{¶5}    The Hollar was incorporated in 1973.  The corporation's only asset is approximately 80 acres of real property in Athens County that apparently has sentimental value to the shareholders.  The Hollar does not generate a profit.  It does, however, pay property taxes.  Typically, when the Hollar's taxes are due, Roxanne notifies the shareholders, and the shareholders pay their respective share of the tax liability.

{¶6}    Shortly after incorporating, the original shareholders of the Hollar executed a shareholders' agreement (hereinafter the "Agreement").  Aileen was not an original shareholder, and she did not sign the Agreement.

{¶7}    Under the terms of the Agreement, the shareholders agreed to provide the Hollar with a right of first refusal should a shareholder seek to sell his or her Hollar stock.  Specifically, the Agreement states, in relevant part, as follows:

> We, the undersigned shareholders in The Hollar, Inc.,
> do hereby, in consideration of the mutual promises
> herein, and for ourselves, assigns, heirs, executors
> and administrators agree as follows:
> 1. That in the event each or any of us desires to sell
> his share in The Hollar, Inc., he shall notify the
> corporation of his intent to sell and the price which he
> desires for said share.  Within 30 days of said
> notification, the corporation shall have the right to
> purchase said share at that price.
> 2. That in the event each of any of us receives a bona
> fide offer to buy his share at any price, he shall notify
> the corporation, and the corporation shall have the
> right to purchase the said share at that price within 30
> days of notification.  In the event that the corporation
> does not purchase at that price, within 30 days, each

or any of us may sell said share to the bona fide

offeree.  Agreement at 1.

{¶8}    In early 2007, Aileen expressed a desire to sell her interest in the Hollar. Ray and Roxanne then met to discuss of the possibility of purchasing Aileen's Hollar stock.  Ray testified that he informed Roxanne that he valued Aileen's stock at $6,000 to $12,000.  Ray and Roxanne agreed, however, to make a below-value offer to Aileen for her stock.  Following the meeting, Roxanne contacted Aileen.  Aileen testified at deposition that "Roxanne said that Ray had offered $5,000, and I said, well, no I'm not interested."  Aileen Dep. Tr. at 16.

{¶9}    Shortly thereafter, Roxanne informed Aileen that Roxanne's brother, Stephen, was willing to purchase Aileen's Hollar stock.  Eventually, Stephen formally offered to purchase Aileen's stock for $10,000.  At that point, Aileen attempted to provide the Hollar with the 30-day time period to exercise its right of first refusal.  During this time, Ray cancelled two shareholders' meetings that were scheduled to vote on Aileen's proposed stock sale.  Additionally, Ray did not call any shareholders' meetings, though he could have done so.  Ray also contacted Aileen on multiple occasions to convince her to sell her stock to either the Hollar or to Ray individually.

{¶10}  In late March or early April 2007, Stephen offered $10,250 for Aileen's stock.[1]  The apparent purpose of this offer was to start a new 30-day time period for the Hollar to exercise its right of first refusal.  Aileen's sale to Stephen closed on May 1, 2007.  According to Ray, the Hollar did not have a full 30 days to vote on the $10,250 offer.

---

[1] Aileen testified at deposition that she sold her stock to Stephen for $10,200. Apparently, the discrepancy is the result of differing memories of the final sale price.

{¶11} Following the sale of Aileen's stock to Stephen, Ray filed suit individually and derivatively on behalf of the Hollar against Roxanne, Aileen, and Stephen. The complaint alleges claims for breach of the Agreement, breach of fiduciary duty, unjust enrichment, tortious interference with business relationships, and civil conspiracy. On November 3, 2010, the trial court granted the Defendants' motion for summary judgment based on a finding that the Hollar's right of first refusal was unenforceable. Then, on November 10, 2010, the trial court entered its final judgment dismissing all of the claims in Ray's complaint.

{¶12} Ray appeals and asserts the following assignments of error: I. "The Trial Court erred as a matter of law when it granted the Defendants' Motion for Summary Judgment on all of the Plaintiffs' claims because there were contested genuine issues of material fact on all eight causes of action." II. "The Trial Court erred as a matter of law when it granted summary judgment on the issue of the enforceability of the restrictive shareholders' agreement, as the parties had actual knowledge of the agreement and it was enforceable pursuant to Ohio Revised Code Section 1308.11." And III. "The Trial Court erred as a matter of law when it dismissed the Plaintiffs' claim for breach of contract when it failed to consider whether Roxanne Groff had breached the Hollar Agreement."

{¶13} The Defendants cross-appeal and assert twelve assignments of error: I. "Defendants' First Motion for Judicial Notice, Second Motion for Judicial Notice and Third Motion for Judicial Notice Support Defendants/Appellees/Cross-Appellants' Equitable Defenses and Should Have Been Granted by the Trial Court." II. "Hollar, at All Times 'Insolvent' as Defined in R.C. § 1701.01(O), Was Restricted by R.C. §

1701.35(B) from Redeeming Its Common Stock." III. "Based upon the Equitable Doctrine of Unclean Hands (Lack of Standing), the Second Motion for Summary Judgment of Defendants/Appellants [sic]/Cross-Appellants Should Have Been Granted with Respect to Causes of Action One through Seven of the Complaint." IV. "All Claims in the Complaint Are Barred by the Equitable Doctrine of Estoppel." V. "Causes of Action One through Seven of Plaintiffs/Appellants/Cross-Appellees' Complaint Are Barred by the Equitable Doctrine of Laches." VI. "The Shareholders Agreement Was Unenforceable Because It Lacked Contractual Mutuality of Obligation." VII. "The Shareholders Agreement Was Unenforceable Because It Was Impossible for Hollar to Meet Its Performance Obligations Pursuant to the Agreement." VIII. "The Beliefs of the Parties, Who Mistakenly Thought the Shareholders Agreement Was Binding, Do Not Create a Material and Genuine Issue of Fact or Otherwise Change the Law with Respect to the Enforceability of the Shareholders Agreement." IX. "The Shareholders Agreement Was Not Breached, And Its Terms Were Not Binding Upon Defendants/Cross-Appellants." X. "Defendant/Appellee/Cross-Appellant Roxanne Groff Did Not Breach A Fiduciary Duty or Abuse Control As a Holler [sic] Stockholder Or Officer, And She Was Not Unjustly Enriched." XI. "There Was No Illegal Conspiracy." And XII. "Defendants/Cross-Appellees [sic] Did Not Intentionally Interfere With Plaintiff/Cross-Appellee Huffman's Alleged Business Relationships."

II.

{¶14} Initially, we note that the Defendants' second through twelfth assignments of error are not properly raised in a cross-appeal. Under App.R. 3(C)(1), "A person who intends to defend a judgment or order against an appeal taken by an appellant *and who*

*also seeks to change the judgment or order or, in the event the judgment or order may*

*be reversed or modified, an interlocutory ruling merged into the judgment or order*, shall

file a notice of cross appeal[.]" (Emphasis added.) Defendants' second through twelfth

assignments of error do not seek to change the judgment of the trial court. Instead, the

Defendants assert alternative reasons why summary judgment was proper. But "a

cross-appeal is not the proper format to defend a grant of summary judgment [because

a] party to a civil lawsuit has no standing to cross-appeal a final judgment in its favor."

*Hellman v. Motorists Mut. Ins. Co.*, 153 Ohio App.3d 405, 2003-Ohio-2671, 794 N.E.2d

688, ¶ 24 (3d Dist.).

{¶15} Accordingly, we will not address the Defendants' improper assignments of

error. Additionally, Defendants' first assignment of error is properly raised as a cross-

appeal. We will address the Defendants' first assignment of error following our

resolution of Ray's assignments of error.

III.

{¶16} We next address Ray's assignments of error. "Because this case was

decided upon summary judgment, we review this matter de novo, governed by the

standard set forth in Civ.R. 56." *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559,

833 N.E.2d 712, ¶ 8. Summary judgment is appropriate only when the following have

been established: (1) that there is no genuine issue as to any material fact; (2) that the

moving party is entitled to judgment as a matter of law; and (3) that reasonable minds

can come to only one conclusion, and that conclusion is adverse to the nonmoving

party. Civ.R. 56(C). *Accord Bostic v. Connor*, 37 Ohio St.3d 144, 146, 524 N.E.2d 881

(1988); *Grimes v. Grimes*, 4th Dist. No. 08CA35, 2009-Ohio-3126, ¶ 14. In ruling on a

motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. *Doe v. First United Methodist Church*, 68 Ohio St.3d 531, 535, 629 N.E.2d 402 (1994).

**{¶17}** The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in [Civ.R. 56], must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). *Accord Grimes* at ¶ 15.

**{¶18}** "In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail." *Grimes* at ¶ 16. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." *Morehead v. Conley*, 75 Ohio App.3d 409, 412, 599 N.E.2d 786 (4th Dist.1991). *Accord Grimes* at ¶ 16.

### A.

**{¶19}** We will address Ray's second assignment of error out of order. In his second assignment of error, Ray claims that Aileen breached the Agreement by failing to provide the Hollar with a right of first refusal to purchase her stock.

**{¶20}** Essentially, the Agreement provides that a shareholder who wants to sell his or her shares in the Hollar has to provide the Hollar with a 30-day period in which to exercise a right of first refusal. Aileen attempted to follow the Agreement and afford the

Hollar the opportunity to exercise the right of first refusal.  Ray, however, argues that her efforts fell short.  As a result, Ray contends that Aileen breached the Agreement.

**{¶21}**  Ray's arguments fail for two reasons.  First, the Agreement was not effective against Aileen.  Second, even if the Agreement was effective against Aileen, the record shows that Aileen complied with the Agreement.

**{¶22}**  Aileen was not an original shareholder in the Hollar, and she did not sign the Agreement.  Nevertheless, Ray contends that Aileen had actual knowledge of the Agreement before she sold her stock to Stephen.  Therefore, according to Ray, the Agreement was enforceable against Aileen.  Ray relies on R.C. 1308.11(A), which provides as follows:

> A restriction on transfer of a security imposed by the issuer, even if otherwise lawful, is ineffective against a person without actual knowledge of it unless: (1) The security is certificated and the restriction is noted conspicuously on the security certificate; or (2) The security is uncertificated and the registered owner has been notified of the restriction.

Ray claims that, under R.C. 1308.11(A), Aileen's actual knowledge of the Agreement obligates her to honor the right of first refusal.

**{¶23}**  R.C. 1308.11(A) does not apply to the right of first refusal in the Agreement.  This is so because R.C. 1308.11(A) applies only to restrictions "imposed by the issuer[.]"  And the right of first refusal in the Agreement is not a restriction imposed by the issuer.  *See* R.C. 1308.08 (defining "issuer").  The Agreement is nothing

more than a contract to which Aileen was not a party.  And "[i]t is axiomatic that those not a party to a contract cannot be held liable for a breach of contract."  *Ingle-Barr, Inc. v. Eastern Local School Dist. Bd.*, 4th Dist. Nos. 10CA808 & 10CA809, 2011-Ohio-584, ¶ 9.  Moreover, the comments to R.C. 1308.11 make clear that the statute does not apply in this scenario.  Specifically, the comments state as follows: "This section deals only with restrictions imposed by the issuer.  Restrictions imposed by statute are not affected. * * * *Nor does it deal with private agreements between stockholders containing restrictive covenants as to the sale of the security*."  (Emphasis added.)  1994 Official Comment 5 to UCC 8-204.

**{¶24}**  Thus, Ray cannot show that the Hollar's right of first refusal is effective against Aileen, and the Hollar cannot prevail on a breach of contract claim against Aileen.

**{¶25}**  Furthermore, even assuming the Agreement was effective against Aileen, the record shows that Aileen provided the Hollar with 30 days to exercise its right of first refusal.  By March 19, 2007, all of the Hollar's shareholders were notified of Stephen's $10,000 offer to purchase Aileen's stock.  At that point, the Hollar had 30 days (i.e., until April 18, 2007) to exercise its right of first refusal on Stephen's $10,000 offer.  The sale occurred on May 1, 2007.  Thus, Aileen afforded the Hollar more than 30-days to exercise its right of first refusal.

**{¶26}**  Additionally, Stephen's $10,250 offer did not create a new 30 day time period for the Hollar to exercise its right of first refusal.  The Agreement provides that "[i]n the event that the corporation does not purchase *at that price*, within 30 days" then the shareholder could sell his or her stock.  (Emphasis added.)  Agreement at 1.  The

phrase "at that price" refers to Stephen's $10,000 offer. Because the Hollar did not exercise its right of first refusal on Stephen's $10,000 offer by April 18, 2007, Aileen was free to sell her stock to Stephen.

{¶27} For all of the reasons stated above, Aileen did not breach the Agreement when she sold her stock to Stephen. Also, to the extent that Ray implies that Stephen is somehow liable for breaching the Agreement, Ray has failed to show how Stephen, the purchaser, would be bound by the Agreement.

{¶28} As a result, there is no genuine issue as to any material fact regarding Aileen and Stephen's alleged breach of the Agreement, and the Defendants are entitled to judgment as a matter of law on the Hollar's breach of contract claim.

{¶29} Accordingly, we overrule Ray's second assignment of error.

B.

{¶30} Next, we address Ray's third assignment of error. In his third assignment of error, Ray contends that the trial court erred because it failed to consider whether Roxanne had breached the Agreement.

{¶31} The Agreement restricts a seller's ability to sell his or her stock. Here, the seller was Aileen, not Roxanne. Ray has not articulated a viable theory as to how Roxanne, who was not selling her stock, could have been in breach of the Agreement.

{¶32} Accordingly, we overrule Ray's third assignment of error.

C.

{¶33} In his first assignment of error, Ray contends that the trial court erred by dismissing all of the claims in his complaint. Ray argues that there are genuine issues of material fact on all eight claims. We disagree.

## 1. Breach of Contract Claims

**{¶34}** The first, second, and third claims in Ray's complaint are essentially variations of the Hollar's breach-of-contract-claim based on the Agreement. As detailed above, however, the evidence does not support a breach-of-contract claim. Consequently, the trial court did not err by dismissing the breach of contract claims in the complaint.

## 2. Unjust Enrichment Claim

**{¶35}** We next address the sixth claim. In the sixth claim, Ray asserts an unjust enrichment claim on behalf of the Hollar.

**{¶36}** Ray alleged that "[b]y the wrongful acts and omissions of [Roxanne], the Groff family [i.e., Roxanne and Stephen] has been unjustly enriched at the expense and to the detriment of [the Hollar]." Complaint at ¶ 95. "In order to prevail on an unjust enrichment theory, the plaintiff must establish three elements: '(1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust for him to retain that benefit without payment.'" *Cooper v. Smith*, 155 Ohio App.3d 218, 800 N.E.2d 372, 2003-Ohio-6083, ¶ 30 (4th Dist.), quoting *Pine v. Price*, 7th Dist. No. 01-CO-46, 2002-Ohio-5223, ¶ 19.

**{¶37}** Presumably, Ray's theory is that the Hollar conferred a benefit on the Defendants by not exercising its right of first refusal. However, as shown above, the Hollar did not actually have a right of first refusal with respect to Aileen's stock sale. Alternatively, the Hollar had the opportunity to exercise its right of first refusal, but it simply failed to exercise that right. Therefore, there is no evidence in the record that the

Hollar conferred a benefit on anyone sufficient to prevail on an unjust enrichment claim. Consequently, the trial court did not err in dismissing the unjust enrichment claim.

### 3. Claims For Breach of Fiduciary Duty and
### Tortious Interference with a Business Relationship

**{¶38}** The fourth and fifth claims in the complaint are breach-of-fiduciary-duty claims. The eighth claim is a tortious-interference-with-business-relationships claim. We will consider the breach-of-fiduciary-duty claims and tortious-interference-with-business-relationship claim together.

**{¶39}** Ray claims that Roxanne persuaded him that they should make a below-value offer to Aileen for her stock. According to Ray, Roxanne then misrepresented to Aileen that the $5,000 offer was Ray's idea alone. And by doing so, Ray contends that Roxanne "poisoned the well" and, consequently, that Roxanne's actions prevented the Hollar or Ray from purchasing Aileen's Hollar stock. Appellant's Merit Brief at 14.

**{¶40}** Ray argues that Roxanne's conduct constitutes a breach of her fiduciary duties to Ray and the Hollar. Additionally, Ray claims that Roxanne tortiously interfered with his and the Hollar's business relationships.

**{¶41}** A plaintiff must prove damages to recover under a breach-of-fiduciary-duty claim or a tortious-interference-with-business-relationships claim. To prevail on a breach of fiduciary duty claim, "a party must show the existence of a fiduciary relationship, failure to comply with a duty accorded that relationship, and damages proximately caused by that failure." *Morgan v. Ramby*, 12th Dist. Nos. CA2010-10-095 & CA2010-10-101, 2012-Ohio-763, ¶ 25; *Keybank Natl. Assoc. v. Guarnieri & Secrest, P.L.L.*, 7th Dist. No. 07 CO 46, 2008-Ohio-6362, ¶ 33. Additionally, "[t]he elements of

tortious interference with a business relationship are: (1) the existence of a prospective business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Morrison v. Renner*, 5th Dist. CT2011-0010, 2011-Ohio-6780, ¶ 21.

**{¶42}** "The general rule for the recovery of compensatory damages is that injury and the resulting damage must be shown with certainty and not be left to conjecture and speculation." *Pietz v. Toledo Trust Co.*, 63 Ohio App.3d 17, 22, 577 N.E.2d 1118 (6th Dist.1989). "It is uncertainty as to the *existence* of damages, not uncertainty as to the amount, which precludes recovery." (Emphasis sic.) *Id.* "Thus, to survive a motion for summary judgment, [Ray or the Hollar] must present some evidence as to their actual damages." *Peltier v. McCartan*, 3d Dist. No. 17-05-14, 2005-Ohio-3901, ¶ 10.

**{¶43}** Here, there is no evidence in the record that Ray or the Hollar have suffered, or will suffer, any damages as a result of Roxanne's alleged misconduct. The Hollar does not generate a profit or pay dividends. Moreover, the Hollar incurs regular expenses in the form of property taxes. Simply put, given the evidence in the record, Ray's or the Hollar's damages are based on conjecture or speculation. Thus, there is no evidence of the existence of any actual damages based on Roxanne's alleged misconduct. Consequently, Ray cannot demonstrate a genuine issue of material fact as to the breach-of-fiduciary-duty or tortious-interference-with-business-relationships claims.

**{¶44}** Accordingly, the trial court properly dismissed the claims for breach of fiduciary duty and tortious interference with business relationships.

## 4. Civil Conspiracy Claims

**{¶45}** Ray also asserts a civil conspiracy claim against Roxanne, Aileen, and Stephen. "The elements of civil conspiracy in Ohio are (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy." *Boston v. Lambert*, 4th Dist. Nos. 93CA40 & 93CA44, 1994 WL 681060, *6 (Nov. 30, 1994); *accord Pheils v. Palmer*, 6th Dist. Nos. L-98-1053 & L-08-1333, 2009-Ohio-6342, ¶ 45; *see also Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 700 N.E.2d 859 (1998). "An underlying tort is necessary to give rise to a cause of action for conspiracy." *Cook v. Kudlacz*, 2012-Ohio-2999, 974 N.E.2d 706, ¶ 90 (7th Dist.), quoting *Ohio Assn. of Pub. School Emps./AFSCME Local 4, AFL-CIO v. Madison Local School Dist. Bd. of Edn.*, 190 Ohio App.3d 254, 2010-Ohio-4942, 941 N.E.2d 834, ¶ 62 (11th Dist.).

**{¶46}** Here, as shown above, summary judgment was proper on all the other claims in the complaint. Thus, "[t]here is no remaining viable underlying tort[.]" *Cook* at ¶ 91. And "summary judgment was appropriately granted on the civil conspiracy claim." *Id.* As a result, the trial court properly dismissed Ray's civil-conspiracy claim.

### 5.

**{¶47}** In conclusion, there is no genuine issue as to any material fact regarding any of the claims in Ray's complaint. The Defendants are entitled to judgment as a matter of law on all of the claims. And reasonable minds can come to only one conclusion, and that conclusion is adverse to Ray and the Hollar. Accordingly, we overrule Ray's first assignment of error.

### IV.

{¶48} As stated above, the Defendants filed a cross-appeal. Although they asserted twelve assignments of error, only the first assignment of error was properly raised in a cross-appeal. In their first assignment of error, the Defendants contend that the trial court erred by failing to grant their three motions for judicial notice. However, we have determined that summary judgment was proper on all of the claims in Ray's complaint. As a result, the Defendants' first assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

V.

{¶49} In conclusion, we overrule all of Ray's assignments of error, and the properly raised assignment of error in Defendants' cross-appeal is moot. Thus, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT AFFIRMED.  Appellants shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

McFarland, P.J. & Harsha, J.: Concur in Judgment & Opinion.

For the Court

BY:_____
         Roger L. Kline, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**